199 Ill. App.3d 1050 (1990)
557 N.E.2d 959
In re M.W. et al., Minors (Michael Walker et al., Appellants,
v.
The State of Illinois, Appellee).
No. 3-88-0089.
Illinois Appellate Court  Third District.
Opinion filed July 13, 1990.
*1051 William Mack Anderson IV, of Peoria, and Joseph O'Donnell, of Macomb, for appellants.
John R. Clerkin, State's Attorney, of Macomb (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.
Reversed and remanded.
JUSTICE STOUDER delivered the opinion of the court:
Following hearings in the circuit court of McDonough County, the trial court entered a judgment terminating the parental rights of Virgil Zapplin, and appellants Michael and Sandra Walker. Michael Walker is the natural father of S.W. and M.W. Sandra Walker is the natural mother of S.W., M.W., and W.I. Virgil Harris Zapplin, the natural father of W.I., has never appeared in this case, was served by *1052 publication, and the termination of his parental rights is not at issue in the instant case. The trial court found inter alia that:
(1) the Walkers have exhibited extreme and repeated cruelty to the minors;
(2) the Walkers have failed to protect the minors from conditions within their environment injurious to the minor's welfare; and
(3) the Walkers have shown an inability to discharge their parental responsibilities due to their mental retardation and mental impairment, respectively, and there is sufficient justification to believe their inability to discharge their parental responsibilities, particularly in light of the special needs of the minors, will extend indefinitely.
Based on these findings, the court appointed a guardian for the minors with the authority to consent to their adoption. The Walkers appeal.
 1, 2 On appeal, the issue is whether the State established by clear and convincing evidence that the Walkers are unfit to be parents. A trial court may appoint a guardian with the authority to consent to the adoption of a minor under section 2-29 of the Juvenile Court Act of 1987 (the Act) (Ill. Rev. Stat. 1989, ch. 37, par. 802-29), whenever it finds by clear and convincing evidence that a nonconsenting parent is unfit as defined in section 1(D) of the Adoption Act (Ill. Rev. Stat. 1989, ch. 40, par. 1501(1)(D)). The Adoption Act defines an "unfit person" as:
"[A]ny person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption * * *." (Ill. Rev. Stat. 1989, ch. 40, par. 1501(1)(D).)
Section 1(D) of the Adoption Act then lists various specific grounds of unfitness. Those alleged in the instant case were: (1) extreme and repeated cruelty to the minors; (2) failure to protect the minors from conditions within their environment injurious to their welfare; (3) continuous and substantial neglect of the minors; and (4) that the Walkers are incapable of discharging their responsibilities as parents due to mental illness, mental retardation, or mental impairment.
 3-5 It has been recognized that cases of this nature are sui generis; each must be decided in accordance with the particular facts of each individual and varying situation. (Perkins v. Breitbarth (1981), 99 Ill. App.3d 135, 424 N.E.2d 1361.) Hence, in matters involving children and the possible permanent severance of parental rights, the facts must be reviewed with careful scrutiny. (Perkins v. Breitbarth *1053 (1981), 99 Ill. App.3d 135, 424 N.E.2d 1361.) In addition, it is the settled law of this State that to justify termination of the rights of natural parents, their unfitness for the exercise of their parental rights must be established by clear and convincing evidence. (In re Drescher (1980), 91 Ill. App.3d 658, 415 N.E.2d 636.) The reason for such a heavy burden of proof is obvious. "Termination of parental rights is as drastic and permanent an action as can be taken." (Blakey v. Blakey (1979), 72 Ill. App.3d 946, 947, 391 N.E.2d 222, 223.) While reviewing courts will not substitute their judgment for those of the trial court when the trial court's judgment is clearly supported in the record, reversal is required where the trial court's decision is contrary to the manifest weight of the evidence. (Peyla v. Martin (1976), 40 Ill. App.3d 373, 352 N.E.2d 407.) After a meticulous scrutiny of the record, we find that the evidence presented by the State in the instant case fails to meet the heavy burden of proof. Accordingly, the trial court's findings were against the manifest weight of the evidence.
The State initially filed petitions for adjudication of wardship of the minors, without requesting a termination of parental rights. The petitions alleged that the minors were abused, their environment was injurious, the minors were possibly sexually abused, and that M.W. needed further medical evaluation of her physical and mental condition. These petitions were filed after M.W. exhibited unusual behavior in school and after the Department of Children and Family Services (DCFS) found the Walker home to be inadequately cleaned and the meals to be inadequately prepared. Following a hearing, the trial court found the minors to be abused and placed the minors in the temporary custody of DCFS. In addition, the court directed the Child Development Clinic at the University of Iowa Hospital to perform a developmental assessment of the family (the Iowa Report).
On November 26, 1986, following the filing of the Iowa Report, a supplemental petition to terminate the Walkers' parental rights was filed. The petition's allegations mirrored the allegations in the earlier petitions for adjudication of wardship. A hearing was held and the trial court entered an order terminating the Walkers' parental rights.
We initially address the sexual abuse charge. The State presented the testimony of Dr. Randell Alexander of the University of Iowa. Dr. Alexander noted that his job is to determine if a child has been sexually abused and that in 99% of the cases he reviews he finds sexual abuse. However, Dr. Alexander testified that he could reach no definite conclusion of child abuse in the instant case. He stated that in his examination of these children, six months after they were removed from the Walker household, he found the abnormal scarring in the *1054 children's vaginal areas to be consistent with a case of sexual abuse or other circumstance. Dr. Alexander, however, could not determine the cause of the scars.
The Walkers presented the testimony of their family pediatrician and a pediatrician who examined the children at the request of DCFS. The family pediatrician, Dr. An-Shin Lin, testified that he has attended to the children since 1984. Dr. Lin stated that the scarring around M.W.'s vagina was due to a severe diaper rash, complicated by a secondary staph infection. He also stated that the children did not exhibit unusual behavior in his examinations of them, and that if he had observed any unusual physical symptoms or behavior on the part of the children which would lead him to believe there was possible physical or sexual abuse, he would have contacted DCFS. In addition, the Walkers called to testify Dr. Jeffrey Hemp, a pediatrician who examined the children at the request of DCFS shortly after their removal from the Walker home. Dr. Hemp testified that M.W. was suffering from petit mall seizures which led to her unusual behavior in school. Dr. Hemp also noted that he found no evidence of sexual abuse and that the children did not react unusually during his examination of them.
The Iowa Report also contained allegations of sexual abuse. However, Marcia Heitz, a DCFS investigator who worked in conjunction with the University of Iowa doctors, testified that the only way she was able to obtain evidence of sexual abuse from the children was to ask leading questions. The record contains a dialogue between attorney William Anderson and W.I. illustrating the inability of W.I. to answer truthfully. During this dialogue, in response to completely fictitious questions, W.I. states that she remembered when the court reporter gave her baths and the time that attorney Anderson spanked her for fighting with her sister. The trial court recognized that the children were incapable of giving a truthful statement. Thus, it appears the trial court found Dr. Alexander's testimony to sufficiently support the sexual abuse charge.
 6 After carefully reviewing Dr. Alexander's testimony, however, we find it to be inconclusive. Dr. Alexander indicated that the vaginal scars may have been the result of sexual abuse, but he could not reach a conclusion. Moreover, in opposition to Dr. Alexander's inconclusive testimony, the Walkers presented the definite testimony of two physicians. These two physicians, Dr. Lin and Dr. Hemp, similarly concluded that the vaginal scarring was not caused by sexual abuse. Given this finding, coupled with the fact that the children did not demonstrate the ability to testify truthfully, we find the evidence in *1055 the record to be insufficient to support the sexual abuse charge.
 7 We also find the evidence to be insufficient to support the other charges brought against the Walkers. We note that the children were initially removed from the Walker household after the trial court found the home to constitute an environment injurious to their welfare. The trial court found the home to be unclean and nutritious meals to be inadequately prepared. Since that time, however, Sandra Walker has enrolled in parenting classes in order to improve her homemaking skills. The record also indicates that Sandra has made significant improvements in her homemaking skills and that her in-home counselor recommends the return of the children into the home. Accordingly, we find that the State failed to prove that the home constitutes an environment injurious to the children's welfare by clear and convincing evidence.
 8 The State also failed to prove by clear and convincing evidence that the Walkers' alleged mental condition was such that it would extend beyond a reasonable time. Section 1(D)(p) of the Adoption Act provides the standard for finding a parent unfit based upon mental disabilities:
"[I]nability to discharge parental responsibilities supported by competent evidence from a psychiatrist or clinical psychologist of mental impairment, mental illness or mental retardation * * * and there is sufficient justification to believe that such inability to discharge parental responsibilities shall extend beyond a reasonable time period." Ill. Rev. Stat. 1989, ch. 40, par. 1501(D)(p).
 9 The Iowa Report indicates that Sandra had a full scale IQ of 75 and that Michael had a full scale IQ of 68. According to the Iowa report, Sandra is of low average intelligence and Michael is slightly retarded. Dr. Alexander predicted that it would be impossible for Michael to improve his reading ability. However, Ms. Charlotte Fayhee, Michael's reading teacher, testified that in the year between the production of the Iowa Report and the dispositional hearing Michael had attained a second-grade reading level and that, in her opinion, he has not shown any indication of reaching the limit of his learning ability. In addition, little evidence was adduced showing that either Sandra or Michael Walker had a medically diagnosed mental impairment which would extend beyond a reasonable time period.
Dr. James Tiller testified for the State to the effect that the Walkers' low IQ and lack of parenting skills were so great that they necessitated the termination of parental rights. Dr. Tiller further noted that he has recommended in the past that parental rights not be terminated *1056 and the children be returned to the parents. In the instant case, however, Dr. Tiller stated that the difference here is Michael's alleged alcohol problem. We note, significantly, that the trial court found this alcoholism charge against Michael Walker to be baseless.
Therefore, because there was no proof of an alcoholism problem, and little evidence of the Walkers' having mental impairments, we find that the State failed again to meet its burden of proving by clear and convincing evidence that the parents had mental inabilities sufficient to prevent them from discharging a parent's normal responsibilities.
 10 In addition, we find the evidence of the parents' willingness to partake in the parenting and counseling programs significant. Although the State did not allege in its petition that the Walkers' parental rights should be terminated due to their failure to make reasonable efforts to correct the conditions which were the basis of the removal of the children from them (see Ill. Rev. Stat. 1989, ch. 40, par. 1501(1)(D)(m)), it is readily apparent that the legislature considers this to be a significant factor in cases such as this. The efforts of the parents to carry out their responsibilities, rather than the success of such efforts, should be considered in determining the correctness of a finding that a parent is unfit to exercise parental rights. (In re Drescher (1980), 91 Ill. App.3d 658, 415 N.E.2d 636.) Indeed, it has been held that the statute requires proof of a failure to make reasonable progress in order to support a finding of unfitness. (In re Austin (1978), 61 Ill. App.3d 344, 378 N.E.2d 538.) Whether or not a parent has made "reasonable progress" toward the return of the children during the time the children are removed from the parental home, and in order to determine whether reasonable progress has been made, the court should consider the situation which triggered the children's initial removal as a bench mark for measuring such reasonable progress. In re Bennett (1980), 80 Ill. App.3d 207, 399 N.E.2d 735.
In the instant case, since March of 1986, the Walkers have attended the STEP (Systematic Training for Effective Parenting) program. Jean Whitehead, a counselor hired through DCFS, stated that she had rendered services in the Walker household over many months and that in that period of time the home had been transformed into a neat and clean home which would provide a good home for the minors. Whitehead further recommends that the minors be returned home. The Walkers also attended counseling as recommended by DCFS until the counselor cancelled the remaining counseling sessions against the wishes of the Walkers. More importantly, since the time the initial charges were brought, the Walkers have made reasonable *1057 and arguably significant progress. In addition, Michael's co-workers and supervisor at work testified as to his concern for the children. They essentially related that Michael took substantial amounts of time off of work in order to be present at the scheduled visitations with his children and that Michael always expressed his concern for their well-being. We believe it would further the legislature's intent by rewarding those who willingly partake in such programs. Accordingly, we find the evidence of the parents' willingness to partake in the aforementioned programs to constitute a sufficient refutation of the State's grounds for a finding of unfitness.
For these reasons, we reverse the judgment of the circuit court of McDonough County terminating the parental rights of Michael and Sandra Walker and remand this case for proceedings consistent with this opinion.
Reversed and remanded.
BARRY and SCOTT, JJ., concur.