*In re* L.N., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Kimberly N., Respondent-Appellant).

Third District   No. 3—95—0267

Opinion filed February 26, 1996.

Thomas E. McClure and David E. Bergdahl, both of Elliott & McClure, of Bourbonnais, for appellant.

Michael J. Kick, State's Attorney, of Kankakee (John X. Breslin and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

The State filed a petition to terminate the parental rights of Kimberly N. (respondent) to her daughter, L.N. L.N.'s father was defaulted and his rights were terminated. Following a series of evidentiary hearings, the court terminated the parental rights of respondent. Respondent now appeals, raising the following issues for our consideration: (1) whether the court improperly relied upon a nonstatutory factor in terminating her parental rights; (2) whether the court applied the proper standard of proof; (3) whether the actions of the Department of Children and Family Services (DCFS) excuse her failure to comply with portions of her service plans; and (4) whether the evidence showed by clear and convincing evidence that her parental rights should be terminated. We reverse.

The State filed a two-count petition on January 25, 1990, alleging that L.N. was an abused and neglected minor. Count I alleged that L.N. was abused in that respondent allowed Jeff Humek to commit an act of sexual conduct with L.N. Count II alleged that L.N. was neglected in that her environment was injurious to her welfare. Count I was dismissed, and L.N. was adjudicated a neglected minor pursuant to count II and placed in the custody of DCFS on June 19, 1990.

On June 14, 1993, the State filed a petition to terminate parental rights. Two statutory grounds for termination were alleged in the petition: (1) "failure to protect the child from conditions within his environment injurious to the child's welfare" (see 750 ILCS 50/1(D)(g) (West 1992)) and (2) "failure by a parent to make reasonable efforts to correct the conditions which were the basis for the removal of the child from such parent, or to make reasonable progress toward the return of the child to such parent within 12 months after an adjudication of neglected minor, abused minor or dependent minor under the Juvenile Court Act or the Juvenile Court Act of 1987" (see 750 ILCS 50/1(D)(m) (West 1992)). Following an evidentiary hearing on March

23, 1994, the court entered an order finding that respondent had made reasonable progress towards the goal of reunification with the child and had made reasonable efforts to correct the conditions that were the basis for the child's removal. However, the court kept the matter under advisement and gave respondent 60 days to sever her relationships with her father, James N., and her live-in companion, Gene Franklin. The court found that these relationships prevented the respondent from providing the minor with an environment free from the threat of abuse.

The parties appeared at a supplemental hearing on January 4, 1995, at which time the court heard evidence on the issue of whether respondent had complied with its previous order. After taking the matter under advisement, the court concluded that respondent had not satisfied the conditions set forth by the court in its previous order. The court entered an order terminating respondent's parental rights on March 22, 1995.

■ We agree with the respondent that the State did not prove her unfit by clear and convincing evidence, and therefore we address only that issue. Parental rights of a nonconsenting parent may only be terminated upon an adjudication of unfitness, and a finding of unfitness must be supported by clear and convincing evidence. (*In re S.G.* (1991), 216 Ill. App. 3d 668, 575 N.E.2d 932.) "Termination of parental rights is as drastic and permanent an action as can be taken." (*Blakey v. Blakey* (1979), 72 Ill. App. 3d 946, 947, 391 N.E.2d 222, 223.) A reviewing court will not substitute its judgment for that of the trial court when the trial court's decision is clearly supported by the record, but reversal is required when the trial court's decision is contrary to the manifest weight of the evidence. (*In re M.W.* (1990), 199 Ill. App. 3d 1050, 557 N.E.2d 959.) After careful review of the record, we do not believe the State proved its case by clear and convincing evidence.

■ Initially, we believe it was improper for the State to allege as one of the grounds for termination that respondent failed to protect the child from an environment injurious to her welfare. L.N. had been in foster care for several years and, thus, respondent could not have failed to protect the child from an injurious environment. (See *In re Massey* (1976), 35 Ill. App. 3d 518, 521-22, 341 N.E.2d 405, 408 ("Since the child has been in a foster home for the past 6 years, the parents could not have failed to protect it during this time").) While certainly respondent's alleged failure to protect the child could form the basis for the initial removal of the child from the home, we do not believe that such an allegation is relevant in a subsequent termination proceeding when the child has been in foster care.

■ Thus, the only pertinent allegations in the State's petition were those that respondent failed to make reasonable efforts to correct the conditions that were the basis for the removal of the child or to make reasonable progress toward the return of the child to such parent within 12 months after an adjudication of neglect. These are separate and independent bases for a finding of unfitness. (*In re S.J.* (1992), 233 Ill. App. 3d 88, 598 N.E.2d 456.) Whether a parent has made reasonable efforts to correct the conditions involves a subjective judgment based upon the amount of effort that is reasonable for a particular person, while a parent's reasonable progress toward the return of the children involves an objective judgment based upon progress measured from the conditions in existence when custody was taken from the parent and requires demonstrable movement toward the goal of reunification. (*S.G.*, 216 Ill. App. 3d 668, 575 N.E.2d 932.) We agree with the finding of the trial judge that respondent made both reasonable efforts to correct the original problems and reasonable progress towards the return of the child and, accordingly, conclude that the trial court should not have found respondent to be unfit.

■ The record clearly reveals that, not only did respondent make reasonable efforts to correct the conditions that were the basis for the removal of the child, she in fact did correct those conditions. L.N. was originally removed from respondent's care because of sexual conduct perpetrated on L.N. by respondent's husband. Earlier, three members of respondent's family also abused L.N. L.N. reported this abuse to respondent in the spring of 1989. Respondent had L.N. examined by a doctor and then reported the incidents to DCFS. Two of the three abusers were prosecuted for the offense. In January 1990, respondent found out that her husband, Jeff Humek, was abusing L.N. Respondent immediately began divorce proceedings, and her divorce became final in April 1990. It is difficult to conceive what else respondent could have done besides having the offenders prosecuted and severing her ties with them. Thus, we conclude that the State failed to show by clear and convincing evidence that respondent failed to make reasonable efforts to correct the conditions that were the basis for L.N.'s removal.

■ Next, we turn our attention to whether respondent made reasonable progress toward the return of the child within 12 months of the adjudication of neglect. As previously stated, this involves an objective judgment based upon progress measured from the conditions in existence when custody was taken and requires demonstrable movement toward the goal of reunification. (*S.G.*, 216 Ill. App. 3d 668, 575 N.E.2d 932.) The benchmark for measuring such progress is

the situation which triggered the initial removal of the child. *M.W.*, 199 Ill. App. 3d 1050, 557 N.E.2d 959.

After respondent's divorce was final, she moved in with her father. DCFS recommended that she find her own place to live. She then moved into Tiko Jordan's apartments in Bradley for approximately six months. However, DCFS encouraged her to move out because Jordan had molested children and sexually abused women. She then moved into a three-bedroom house at 579 West Station Street, but DCFS told her that this was an improper place to be living because it was across the street from respondent's father, a known perpetrator. Respondent's father had sexually abused respondent as a child, but he had not been accused of abusing L.N. Respondent testified that while living on Station Street, she took steps to keep L.N. shielded from her family members. After the court ordered respondent to sever ties with her father and boyfriend, respondent moved in with a friend at 169$^1/_2$ Third Street. She continued to look for her own place while living there.

In addition to respondent's continual search to find housing that would satisfy DCFS, she attended counseling sessions, maintained a regular visitation schedule with L.N., took parenting classes, and attended an incest survivor's group. Of the nine service plans that DCFS established for respondent, she successfully completed her first four. Her failure to complete the last five was a result of DCFS's conclusion that respondent was putting L.N. at a risk because of the men in her life. Respondent lived across the street from her father, who had abused respondent as a child. However, the reason that respondent ended up in the house across from her father is that DCFS wanted respondent to move out of an apartment that was owned by an alleged child molester. We believe that DCFS's action in requiring respondent to move solely because her landlord was an alleged child molester demonstrates the heavy-handed approach taken by DCFS in this case. DCFS and the court were also concerned with respondent's live-in boyfriend, Gene Franklin, who had admitted to a sexual incident between himself and his nine-year-old stepsister when he was 16. However, respondent had Franklin evaluated by Dr. James Brooks, who for several years was the consultant to DCFS on sex abuse cases, and he testified that his conclusion was that Franklin was not a threat to L.N. and that it would not be a threat for L.N. to reside with Franklin.

In support of its argument that the trial court should be affirmed, the State places heavy emphasis on respondent's failure to complete her service plans and her failure to sever contact with her father and Franklin. These issues are interrelated because respondent's failure

to complete the service plans was a result of her not severing all contact with these two men. Several observations are important here. First, as we have noted, L.N. was removed from respondent's care after she was molested by respondent's husband. Respondent remedied that situation. Neither respondent's father nor Franklin has been accused of molesting L.N. The court in *S.G.* stated that "having made progress toward correcting [the original] problem, the respondents should not have their parental rights terminated for these other nebulous, uncharged reasons." (*S.G.*, 216 Ill. App. 3d at 671, 575 N.E.2d at 935.) Second, the court in *S.J.* explained that placing undue emphasis on DCFS service plans creates a danger of bootstrapping whereby a parent could lose her rights because she failed to do things not related to her previously established shortcomings as a parent. (*S.J.*, 233 Ill. App. 3d 88, 598 N.E.2d 456.) The court stated "[t]o place compliance with DCFS plans ahead of the ultimate fact of progress would be to let the tail wag the dog." (*S.J.*, 233 Ill. App. 3d at 121, 598 N.E.2d at 477.) We believe that any objective review of the record demonstrates the considerable progress respondent made toward the goal of reunification with her child. She divorced the man who had been accused of molesting L.N. and earlier had reported abuse by others to the authorities, who subsequently prosecuted those perpetrators. She maintained a regular visitation schedule with L.N.; kept moving whenever DCFS was not satisfied with her living situation; obtained employment; and attended counseling, an incest survivor's group, and a parenting class. The only thing she did not do, until right before the final court hearing, was to sever contact with her father and Franklin. These men have not been accused of molesting L.N. and any actions by them were not the basis for the removal of L.N. from respondent's care.

Because we find the State fell far short of proving respondent unfit by clear and convincing evidence, we reverse the judgment of the circuit court of Kankakee County terminating respondent's parental rights.

Reversed.

LYTTON and McCUSKEY, JJ., concur.