757 N.E.2d 613 (2001)
325 Ill. App.3d 387
258 Ill.Dec. 924
In re M.A., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
S.R., Respondent-Appellant).
No. 1-99-2105.
Appellate Court of Illinois, First District, Third Division.
September 19, 2001.
*615 Lisa S. Ottenfeld, Rita A. Fry, Public Defender, Chicago, for Appellant.
Renee Goldfarb, Kenneth T. McCurry, and Jennifer Streeter, Richard A. Devine, State's Attorney, Chicago, for Appellee.
Patrick T. Murphy, Charles P. Golbert, and Deborah Pergament, Chicago, Office of the Public Guardian.
Justice HALL delivered the opinion of the court:
Respondent S.R. appeals from the trial court's order finding her to be an unfit parent of her son, M.A., terminating her parental rights and authorizing appointment of a guardian with the right to consent to the adoption of M.A. She contends that the finding of unfitness was not proved by a preponderance of the evidence because this determination was made while M.A. was in foster care and because she was making reasonable progress towards M.A.'s return. She also contends that the State failed to prove by clear and convincing evidence that it was in M.A.'s best interest to have her parental rights terminated.
When M.A. was born on March 16, 1996, he tested positive for cocaine and opiates. He was taken into custody the following December after S.R.'s sister Wanda reported that S.R. was taking M.A. with her when she worked as a prostitute and that S.R.'s apartment was filthy. Another sister, Iris, who subsequently sought to adopt M.A., took M.A. to the hospital because M.A. had sores all over his body due to impetigo. In December 1996, M.A. was placed in Iris's temporary custody.
Following an adjudicatory hearing on April 1, 1997, the trial court found that M.A. was neglected because of a lack of care, an injurious environment and being born drug-exposed. The court also found that M.A. was abused due to a substantial risk of physical harm. Following the dispositional hearing on May 16, 1997, the court found S.R. unable, unwilling and unfit to care for, protect, train or discipline M.A.
*616 On November 24, 1998, the State filed a petition for appointment of a guardian with the right to consent to M.A.'s adoption. On May 24, 1999, a fitness hearing was held.
S.R. testified for the State, for the public guardian and on her own behalf. S.R. was arrested for home invasion in June 1997, was currently serving a 17 year sentence and anticipated release in 2005. Before M.A. was born, S.R. had felony convictions for theft, possession of a controlled substance, robbery and unlawful restraint. S.R. was not employed after M.A. was born and did not receive public aid.
S.R. admitted using cocaine and heroin the night before M.A. was born but denied drug use at any other time during her pregnancy and denied that she was an addict. But, when asked about the months prior to M.A.'s birth, S.R. testified that she had used drugs every other weekend. She supported M.A. any way she could, including prostitution, and she engaged in other criminal activity because she and M.A. had no place to live. S.R. had not attended drug treatment in prison because it was not offered and she was unable to get any services while imprisoned because of the seriousness of her conviction. She also denied ever meeting with the first two caseworkers who testified and stated that no one offered her any assistance. She gave gifts to M.A. and money to her sister so that her mother could bring M.A. to visit her.
Four of M.A.'s caseworkers also testified at the fitness hearing. The first caseworker testified that she was assigned the case in early 1997, but she was unable to locate either S.R. or M.A.'s father and therefore was unable to offer either drug treatment or parenting classes.
By the time the second caseworker was assigned in May 1997, services had been offered to S.R. The caseworker drafted a service plan which included drug treatment, parenting classes, a psychological evaluation and urine drops. He rated S.R. unsatisfactory as a result of her failure to participate in any of these services. The goal for M.A. was changed in June 1998 to long-term relative care. The caseworker admitted that he never contacted S.R., although he knew she was in Cook County jail as early as July 1997.
A third caseworker testified that she visited S.R. at prison in 1998. S.R. told her that it was impossible to obtain services there but promised to enroll in them if they became available. The caseworker rated S.R. as unsatisfactory for her failure to complete any of the suggested services, which the caseworker learned were in fact available at the prison.
In December 1998 when M.A.'s current caseworker was assigned, S.R. had completed a parenting class but not drug treatment.
In ruling on S.R.'s fitness, the trial court found that the State had failed to prove by clear and convincing evidence that S.R. had abandoned M.A. or failed to maintain a reasonable degree of interest, concern or responsibility as to M.A.'s welfare. The court also found that S.R. had made reasonable efforts to correct the conditions that were the basis for M.A.'s removal. However, the court found S.R. unfit based upon her failure to protect M.A. from conditions in his environment that were injurious to his welfare, specifically that M.A. was living in filthy conditions and born exposed to drugs. The court also found that S.R. had failed to make reasonable progress toward the return of M.A. within nine months after the adjudication of neglect.
The court then conducted a hearing to determine whether it was in M.A.'s best interest to have S.R.'s parental rights terminated. *617 M.A.'s current caseworker testified that M.A. had been placed with S.R.'s sister Iris, who wished to adopt him. The caseworker testified that Iris's home was safe and appropriate, and M.A. was happy and had bonded with his foster parents, whom he called "mom" and "dad." According to a developmental evaluation in December of 1998, M.A. suffered from mild speech delays as a result of drug exposure.
The trial court ruled that it was in M.A.'s best interest that S.R.'s parental rights be terminated because S.R. would be incarcerated for at least another six years and it was not right to leave the child in "limbo." S.R. has appealed.
The Juvenile Court Act of 1987 provides a bifurcated procedure to determine whether a parent's rights should be terminated. 705 ILCS 405/2-29(2) (West 1998). The court must first hold an evidentiary hearing to determine whether a parent is unfit, and then it must determine whether termination of the parent's rights is in the minor's best interest. In re Adoption of Syck, 138 Ill.2d 255, 277, 149 Ill.Dec. 710, 562 N.E.2d 174 (1990). The trial court's finding of unfitness is accorded great deference and will not be overturned unless it is contrary to the manifest weight of the evidence and the record clearly demonstrates the opposite result is the only proper one. In re Latifah P., 315 Ill.App.3d 1122, 1128, 249 Ill.Dec. 179, 735 N.E.2d 1004 (2000). This court will not reweigh the evidence or reassess the witnesses' credibility. In re C.L.T., 302 Ill. App.3d 770, 772, 235 Ill.Dec. 863, 706 N.E.2d 123 (1999).
Under the Adoption Act (the Act) (750 ILCS 50/1 et seq. (West 1998)), a parent is considered unfit if he or she fails to make either a reasonable effort to correct the conditions that led to the child's removal or reasonable progress toward the child's return within nine months after an adjudication of neglect. 750 ILCS 50/1(D)(m) (West 1998). These two bases are distinct and require separate analyses. In re J.A., 316 Ill.App.3d 553, 564, 249 Ill.Dec. 484, 736 N.E.2d 678 (2000).
"Reasonable effort," a subjective standard, is associated with the goal of correcting the conditions that caused the removal of the child and focuses on the amount of effort reasonable for the particular parent. In re J.A., 316 Ill.App.3d at 565, 249 Ill.Dec. 484, 736 N.E.2d 678. "Reasonable progress" is an objective standard that relates to making progress toward the goal of returning the child to the parent. In re J.A., 316 Ill.App.3d at 564, 249 Ill.Dec. 484, 736 N.E.2d 678. In this case, the trial court resolved the "reasonable effort" basis in S.R.'s favor. However, the failure to make either reasonable efforts or reasonable progress can be grounds for an adjudication of unfitness. In re C.N., 196 Ill.2d 181, 210-11, 256 Ill.Dec. 788, 752 N.E.2d 1030 (2001)
In C.N., our supreme court rejected the view that a court may look only at the situation that triggered the minor's initial removal or the conditions existing at the time custody was taken in measuring a parent's reasonable progress. C.N., 196 Ill.2d at 213, 256 Ill.Dec. 788, 752 N.E.2d 1030. The court noted that, unlike reasonable efforts, the Act does not limit the "reasonable progress" ground to the conditions that were the basis for the removal of the child. C.N., 196 Ill.2d at 213, 256 Ill.Dec. 788, 752 N.E.2d 1030. The court then stated as follows:
"We reject this narrow view of the reasonable progress ground for the additional reason that it erroneously assumes that the condition which triggered removal of the child is the only condition a parent need ever address in *618 order to achieve the goal of reunification. The parent-child relationship, the environment in the home, and the precise conditions which triggered State intervention do not remain static over time. Thus, the relevant issues are not `frozen' at the moment custody of the child is taken. [Citation.]" (Emphasis in original.) C.N., 196 Ill.2d at 213-14, 256 Ill.Dec. 788, 752 N.E.2d 1030.
The court went on to hold that "the benchmark for measuring a parent's `progress toward the return of the child' under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody * * * to the parent." C.N., 196 Ill.2d at 216-17, 256 Ill.Dec. 788, 752 N.E.2d 1030.
The version of the Act applicable to this case limits the evidence that may be considered to matters concerning the parent's conduct in the nine months following the applicable adjudication of neglect, abuse or dependency. 750 ILCS 50/1(D)(m) (West 1998). Therefore, S.R.'s progress must be assessed and measured in the nine-month period following the adjudication of neglect. See In re D.L., 191 Ill.2d 1, 10, 245 Ill.Dec. 256, 727 N.E.2d 990 (2000) (construing section 1(D)(m) when Act provided for a 12-month period).
M.A. was adjudicated neglected on April 1, 1997, based upon a lack of care, an injurious environment and being born drug exposed. In June 1997, S.R. was arrested for home invasion and sentenced to serve 17 years in prison. Drug treatment, parenting classes and psychological services were offered before and while S.R. was imprisoned, but in the nine months after M.A.'s adjudication of neglect, S.R. failed to complete any service program and was twice rated as "unsatisfactory" by the caseworkers.
The mere fact of S.R.'s incarceration was not evidence of her failure to make reasonable progress. However, S.R.'s choice to continue her criminal activity after the adjudication of neglect, the result of which is her continued incarceration until at least 2005, and her failure to comply with the service plans are clear and convincing evidence that she has failed to make any progress, let alone reasonable progress, toward the return of M.A. to her. See In re B.W., 309 Ill.App.3d 493, 499, 242 Ill.Dec. 671, 721 N.E.2d 1202 (1999) (at a minimum, reasonable progress requires a measurable or demonstrable movement toward the goal of reunification); see also In re D.D., 309 Ill.App.3d 581, 589, 243 Ill.Dec. 365, 723 N.E.2d 397 (2000), aff'd on other grounds, 196 Ill.2d 405, 256 Ill. Dec. 870, 752 N.E.2d 1112 (2001) (court observed that while in some sense the respondent-father's imprisonment was not his "fault," it was his choice to engage in the criminal conduct that caused him to be imprisoned).
In addition, the State urged and the trial court found that another basis for S.R.'s unfitness was her failure to protect M.A. from conditions in his environment that were injurious to his welfare. A minor whose environment is injurious to his welfare is neglected. 705 ILCS 405/2-3(1)(b) (West 2000). It is not error to consider evidence in support of the original neglect petition at a subsequent termination hearing. In re G.V., 292 Ill.App.3d 301, 308, 226 Ill.Dec. 303, 685 N.E.2d 406 (1997) (rejecting In re L.N., 278 Ill.App.3d 46, 49, 214 Ill.Dec. 798, 662 N.E.2d 152 (1996), on which S.R. relies). For all the aforementioned reasons, S.R.'s filthy apartment, her prostitution and M.A.'s *619 medical condition, we conclude that the trial court's decision finding S.R. unfit for failing to protect M.A. from conditions injurious to his welfare was not against the manifest weight of the evidence. See In re B.R., 282 Ill.App.3d 665, 670, 218 Ill. Dec. 404, 669 N.E.2d 347 (1996).
S.R. also contends that the State failed to prove that it was in M.A.'s best interest to have S.R.'s parental rights terminated. Specifically, she maintains that the trial court failed to hear evidence regarding M.A.'s attachment to her or regarding her desire to improve her own life or that of M.A. The decision to terminate parental rights will not be disturbed absent an abuse of the trial court's discretion. In re Sheltanya S., 309 Ill.App.3d 941, 955, 243 Ill.Dec. 441, 723 N.E.2d 744 (1999).
The evidence at the hearing on M.A.'s best interest revealed that M.A. was happy in a stable and safe home and had bonded with his foster parents, S.R.'s sister Iris and her husband, who wished to adopt him. S.R. was not eligible for release until 2005, when M.A. would be nine years old. Moreover, S.R. ingested cocaine and heroin during her pregnancy, which resulted in speech problems for M.A. S.R. did not obtain medical treatment for M.A., who was found with impetigo sores all over his body, she took him with her when she worked as a prostitute, exposed him to a filthy environment and committed a serious felony. The trial court did not abuse its discretion in finding that M.A. needed permanency while S.R. completed her time in prison and did not abuse its discretion in terminating S.R.'s parental rights.
Accordingly, the trial court's order terminating her parental rights and authorizing appointment of a guardian to consent to adoption of M.A. are affirmed.
Affirmed.
CERDA and WOLFSON, JJ., concur.