NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 210019-U

NO. 4-21-0019

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 3, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Aa.C., Ar.C., and V.C., Minors | ) | Appeal from |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County |
| Petitioner-Appellee, | ) | No. 18JA79 |
| v. | ) | |
| Tiffany C., | ) | Honorable |
| | ) | Adam M. Dill, |
| Respondent-Appellant). | ) | Judge Presiding. |
| | ) | |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, concluding the trial court's fitness finding was not
against the manifest weight of the evidence.

¶ 2     In October 2020, the State filed a second petition to terminate the parental rights

of respondent, Tiffany C., as to her minor children, Aa.C. (born February 25, 2009), Ar.C. (born

December 18, 2007), and V.C. (born September 14, 2010).  Following a fitness hearing, the trial

court found respondent unfit.  In December 2020, the court found it was in the minors' best

interest to terminate respondent's parental rights.

¶ 3     Respondent appeals, arguing the trial court erred by finding her unfit due to a

failure to (1) make reasonable efforts to correct the conditions that led to removal of the children

during the period from January 8, 2020, to October 8, 2020, (2) make reasonable progress toward

the return of the children during the same time period, and (3) maintain a reasonable degree of

interest, concern, or responsibility as to the children's welfare. For the following reasons, we affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5                                    A. Initial Proceedings

¶ 6        In October 2018, the State filed petitions for adjudication of wardship, alleging the children were (1) dependent, having no parent, guardian, or custodian (count I) and (2) neglected, pursuant to the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1) (West 2018)), in that their environment exposed them to substance abuse (count II) and criminal activity (count III). Respondent stipulated to probable cause and immediate and urgent necessity, and the trial court placed the children in the temporary custody of the Department of Children and Family Services (DCFS).

¶ 7        In December 2018, the court entered an order finding the minors neglected because respondent was incarcerated on a warrant from Tennessee, had no stable housing, and was engaged in serious substance abuse when the children were in her care. In January 2019, the court entered a dispositional order (1) finding respondent unfit and unable to care for the minors, (2) making the minors wards of the court, and (3) placing custody and guardianship of the minors with DCFS.

¶ 8                                    B. Termination Proceedings

¶ 9        In September 2019, the State filed a motion for the termination of parental rights, alleging respondent failed to make reasonable progress toward the return of the minor within the nine-month period from December 30, 2018, to September 30, 2019. At a January 2020 hearing, the trial court found the State failed to prove respondent unfit. In October 2020, the State filed a second motion to terminate respondent's parental rights, alleging respondent was unfit due to a

failure to (1) make reasonable efforts to correct the conditions that led to removal of the children during the nine-month period from January 8, 2020, to October 8, 2020; (2) make reasonable progress toward the return of the children during the same time period; and (3) maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare.

¶ 10 In October 2020, the trial court held a permanency hearing and made findings it believed relevant to the impending fitness hearing. The court found respondent had not made reasonable and substantial progress toward returning the minors home and had not made reasonable efforts toward returning the minors home. The court further found respondent must consistently engage in services.

¶ 11 In November 2020, the matter proceeded to a hearing on the motion for termination of parental rights. The court heard the following evidence.

¶ 12                                    1. *Ellen Pierce*

¶ 13 Ellen Pierce, the caseworker for Lutheran Social Services of Illinois (LSSI) throughout the case, testified respondent lived in Tennessee during the period of alleged unfitness. In January 2020, respondent lived at Hope Center, a treatment facility. When respondent completed the treatment program, she remained at Hope Center as a resident until she could regain her financial footing. In April, respondent moved in with respondent father. In June, respondent relapsed, and through early August she used methamphetamine and cannabis. In August, respondent was readmitted to a Hope Center facility in Oklahoma. In September 2020, respondent was discharged from the Oklahoma Hope Center and moved in with relatives in Paris, Tennessee. In November, respondent reported she moved in with a paramour.

¶ 14 Pierce testified respondent maintained inconsistent contact. According to Pierce, she would not hear from respondent for two to three months. Then respondent would become

actively engaged and speak with Pierce weekly for approximately a month. Pierce described it as "windows of no communication and brief communication." In May and July 2020, respondent attended two sessions of individual counseling at the Cumberland Treatment Facility in Tennessee. Pierce testified she confirmed respondent attended two sessions but did not successfully complete the services and Cumberland could no longer contact her because her phone number had changed.

¶ 15 Although respondent received substance abuse treatment in the fall, Pierce had no documentation of the treatment and asked respondent for assistance in obtaining documentation. Based on respondent's lack of communication and inability to remain engaged for long periods of time, as well as reports from family members, Pierce wondered if respondent continued to use methamphetamine.

¶ 16 In February 2020, Pierce gave respondent contact information for the Coalition Against Domestic Violence (CADV) so she could engage in domestic violence services. Respondent contacted CADV but reported she could not afford the classes. In June, respondent reported she was looking for a provider, but she never engaged in domestic violence services. Pierce testified respondent never returned consent forms needed to assist her in obtaining domestic violence services.

¶ 17 Pierce testified respondent had the option to have visits in Illinois but she only visited twice—once before January 2020 and once in January 2020. According to Pierce, telephone visits were suspended after the January 2020 visit due to "some concerning behaviors and responses by the children that we have to address appropriately." Specifically, Pierce testified the children were "frightened of losing their stability following telephone conversations" with respondent and "exhibiting emotional stress during their therapy sessions."

During the relevant time period, only Aa.C. asked to speak to respondent. Although Pierce arranged to have telephone calls during therapy sessions to allow the therapist to monitor the child, Aa.C. had not requested such a call.

¶ 18 Respondent sent approximately two letters per month to the children until September. In September and October, respondent sent one letter to V.C. for his birthday. Between January and October 2020, Pierce attempted to contact respondent two or three times a month. Pierce attempted to contact respondent via telephone and e-mail, but respondent did not consistently update her contact information, and Pierce occasionally had no way to contact her. Respondent reported she was separated from respondent father and was going to seek a divorce.

¶ 19 2. *Respondent*

¶ 20 Respondent testified she lived in Henry, Tennessee, with a paramour. In March 2019, respondent completed a substance abuse treatment program at Hope Center. In August 2020, respondent returned to Hope Center for a "45-day reconnect" for those who relapse. When respondent relapsed, she was living with respondent father, which she believed contributed to her relapse. According to respondent, she had been off drugs since August 4, 2020. Also, respondent separated from respondent father and filed for divorce.

¶ 21 Respondent testified she was not engaged in individual counseling or substance abuse services but she recently began domestic violence classes online. According to respondent, she contacted CADV but could not afford the classes. Respondent provided Pierce with contact and employment information so that LSSI might provide financial aid, but respondent had not been asked to sign any consent forms.

¶ 22 Respondent testified she was employed throughout the relevant time period. Respondent wrote to the children regularly and asked about the possibility of virtual visitation.

Respondent acknowledged she had to rebuild relationships with the children and testified she was willing to do so. According to respondent, she maintained contact with Pierce except during her relapse.

¶ 23                                          3. *Trial Court's Order*

¶ 24             The trial court noted its previous findings from the October 2020 permanency hearing. The court noted in July 2020 it found respondent made reasonable efforts but not reasonable and substantial progress. However, had the court known respondent was in a relapse, it would not have found reasonable efforts.

¶ 25             The trial court found respondent made progress during the relevant time period but failed to make reasonable and substantial progress over the entire period. The court noted it found the State failed to prove respondent unfit in January because respondent had made progress. However, the court noted respondent was in the same place she was in nine months earlier and any progress she made during the relevant time period merely got her caught up to where she was in January 2020. The court found respondent failed to make reasonable efforts. Respondent had the tools to avoid a potential relapse and instead put herself in a position where she relapsed. Finally, the court found respondent failed to maintain a reasonable degree of interest where she failed to use the tools available to her to avoid a relapse or to engage in the recommended services.

¶ 26             Following the fitness hearing, the trial court held a separate best-interest hearing. In December 2020, the court entered an order finding respondent unfit due to her failure to make reasonable efforts to correct the conditions which were the basis for the removal of the children, make reasonable progress toward the return of the children, and maintain a reasonable degree of

interest for the children's welfare. The court further found it was in the best interest of the children to terminate respondent's parental rights.

¶ 27     This appeal followed.

¶ 28                              II. ANALYSIS

¶ 29     On appeal, respondent argues the trial court erred by finding her unfit due to a failure to (1) make reasonable efforts to correct the conditions that led to removal of the children during the period from January 8, 2020, to October 8, 2020, (2) make reasonable progress toward the return of the children during the same time period, and (3) maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare.

¶ 30     In a proceeding to terminate parental rights, the State has the burden of proving parental unfitness by clear and convincing evidence. *In re Jordan V.*, 347 Ill. App. 3d 1057, 1067, 808 N.E.2d 596, 604 (2004). In making such a determination, the court considers whether the parent's conduct falls within one or more of the unfitness grounds described in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)). Evidence of unfitness based on any ground enumerated in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)) is enough to support a finding of unfitness, even where the evidence may not be sufficient to support another ground. *In re C.W.*, 199 Ill. 2d 198, 210, 766 N.E.2d 1105, 1113 (2002). A reviewing court will not overturn the trial court's finding of unfitness unless it is against the manifest weight of the evidence. *Jordan V.*, 347 Ill. App. at 1067. The trial court's decision is given great deference due to "its superior opportunity to observe the witnesses and evaluate their credibility." *Id.*

¶ 31     In this case, the State alleged respondent was unfit on three grounds: she failed to (1) make reasonable efforts to correct the conditions that were the basis for the removal of the

children during the period from January 8, 2020, to October 8, 2020, (2) make reasonable progress toward the return of the minors during the same time period, and (3) maintain a reasonable degree of interest as to the children's welfare. The trial court found respondent unfit based on the allegations in the State's petition.

¶ 32　　　　On appeal, respondent contends the trial court's finding of unfitness was against the manifest weight of the evidence. We may affirm on any basis in the record, and we need not review all the grounds for a finding of unfitness if we uphold the trial court's findings as to one ground of unfitness. See *In re D.H.*, 323 Ill. App. 3d 1, 9, 751 N.E.2d 54, 61 (2001). As we find the trial court's finding as to reasonable progress dispositive, we begin there.

¶ 33　　　　The trial court's finding that respondent failed to make reasonable progress toward the return of the minors during the period from January 8, 2020, to October 8, 2020, was not against the manifest weight of the evidence. Reasonable progress is measured by an objective standard that considers the progress made toward the goal of returning the child to the parent. *In re M.A.*, 325 Ill. App. 3d 387, 391, 757 N.E.2d 613, 617 (2001). Specifically, reasonable progress includes a parent's compliance with service plans and court directives, in light of the condition that gave rise to the removal of the child. *In re C.N.*, 196 Ill. 2d 181, 216-17, 752 N.E.2d 1030, 1050 (2001).

¶ 34　　　　Here, respondent was required to engage in various services, including individual counseling, domestic violence classes, and substance abuse treatment. Additionally, respondent was to maintain stable employment and housing. It is undisputed respondent failed to engage in domestic violence services. Although respondent did engage in individual counseling, she attended only two sessions. During the relevant time period, respondent, who previously completed a lengthy inpatient substance abuse treatment program, moved back in with

respondent father and began using methamphetamine and cannabis. During May, June, and July 2020, respondent relapsed and failed to maintain contact with the caseworker. Respondent reentered a treatment program in August 2020 in Oklahoma. She then moved in with relatives in Tennessee before moving in with a paramour. Respondent maintained stable employment throughout the relevant time period, but she failed to maintain stable housing. The court acknowledged that respondent made some progress by completing a second stay in a rehabilitation facility, but it concluded the progress was not reasonable, particularly given respondent's failure to complete other services, such as domestic violence classes. Moreover, as the trial court pointed out, any progress respondent made during the relevant time period merely got her caught back up to where she was in January 2020.

¶ 35        Based upon our review of the record, we cannot say the trial court's fitness finding was against the manifest weight of the evidence. The record demonstrates respondent failed to make reasonable progress toward the return of the children during the relevant nine-month period. Respondent does not challenge the court's best-interest finding. Accordingly, we affirm the judgment of the court.

¶ 36                                III. CONCLUSION

¶ 37        For the reasons stated, we affirm the trial court's judgment.

¶ 38        Affirmed.