NOTICE
This Order was filed under Supreme
Court Rule 23 and is not precedent
except in the limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200544-U

NOS. 4-20-0544, 4-20-0546, 4-20-0547 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 26, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.A., a Minor | ) | Appeal from |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
| Petitioner-Appellee, | ) | Nos. 17JA57 |
| v.      (No. 4-20-0544) | ) | 17JA58 |
| Audrianna P., | ) | |
| Respondent-Appellant). | ) | |
| ------------------------------------------------------------------ | ) | |
| *In re* J.S., a Minor | ) | No. 17JA58 |
| | ) | |
| (The People of the State of Illinois, | ) | |
| Petitioner-Appellee, | ) | |
| v.      (No. 4-20-0546) | ) | |
| Audrianna P., | ) | |
| Respondent-Appellant). | ) | |
| ------------------------------------------------------------------ | ) | |
| *In re* J.S., a Minor | ) | No. 17JA58 |
| | ) | |
| (The People of the State of Illinois, | ) | |
| Petitioner-Appellee, | ) | |
| v.      (No. 4-20-0547) | ) | Honorable |
| Damon S., | ) | John C. Wooleyhan, |
| Respondent-Appellant). | ) | Judge Presiding. |

---

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, concluding the trial court's fitness findings were not
against the manifest weight of the evidence.

¶ 2     In July 2019, the State filed a petition to terminate the parental rights of

respondent mother, Audrianna P., and respondent father, Damon S., as to their minor child, J.S.

(born June 30, 2017), and respondent mother's parental rights as to her minor child, A.A. (born November 7, 2013). Following a fitness hearing, the trial court found respondents unfit. In October 2020, the court found it was in A.A.'s and J.S.'s best interest to terminate respondents' parental rights.

¶ 3        Respondents appeal, asserting the trial court erred in finding respondents failed to (1) make reasonable efforts to correct the conditions that were the basis of removal and (2) make reasonable progress toward the return of the children to their care.

¶ 4                            I. BACKGROUND

¶ 5                        A. Initial Proceedings

¶ 6        In August 2017, the State filed petitions for adjudication of wardship, alleging A.A. and J.S. were neglected, pursuant to the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1) (West 2016)), in that J.S. was born at 31 weeks' gestation, respondent mother was "unable to provide for the minor's feeding, diapering, clothing[,] and other needs as a premature infant, even with prompting and reminders from hospital staff." The petition further alleged respondent father had not been active in caring for J.S., respondent mother had a history of untreated mental health issues, and there was a prior intact case involving the same caregiving concerns when A.A. was born. In May 2018, the trial court entered an order finding the minors neglected. In June 2018, the court entered a dispositional order (1) finding respondents unfit and unable to care for the minors, (2) making the minors wards of the court, and (3) placing custody and guardianship of the minors with the Department of Children and Family Services (DCFS).

¶ 7                        B. Termination Proceedings

¶ 8        In July 2019, the State filed a motion for the termination of parental rights, alleging respondents failed to (1) make reasonable efforts to correct the conditions that were the

basis for the removal of the children and (2) make reasonable progress toward the return of the minors within any nine-month period after the adjudication of neglect. The State alleged the following specific nine-month periods: (1) May 11, 2018, to February 10, 2019; (2) February 11, 2019, to November 10, 2019; and (3) September 27, 2019, to June 26, 2020.

¶ 9     In June 2020, the matter proceeded to a hearing on the motion for termination of parental rights. At the outset of the hearing, the trial court took judicial notice of its own records showing that visitation with respondents was suspended in June 2019. Further, the court took judicial notice of the fact respondents never had unsupervised, overnight, or extended visitation. The court heard the following evidence.

¶ 10                    1. *Deb Roberts*

¶ 11     Deb Roberts, the director of the foster care program at Chaddock, testified she supervised three caseworkers on the case. Roberts laid the foundation for the integrated assessment and the service plan. According to Roberts, the assessment recommended habilitation services because, although stable, the family's house was inappropriate for the children.

¶ 12                    2. *Gina Aschemann*

¶ 13     Gina Aschemann, a former child welfare specialist with Chaddock, testified she was assigned the case in September 2018. In December 2018, a service plan identified various tasks for respondents to complete, including parenting classes, seeking employment, maintaining adequate housing, obtaining mental health services, and cooperating. Respondent mother was rated unsatisfactory for mental health services because she had not attended an appointment with her psychiatrist since June, she was not taking medication as prescribed, and she was not

involved in ongoing counseling services. Respondent father was rated unsatisfactory for mental health services because he never completed a mental health evaluation.

¶ 14    Respondents were rated unsatisfactory for housing because their apartment was dirty, there were bags of foul-smelling garbage in the house, there were holes in the walls, and the refrigerator did not work. According to Aschemann, respondents then moved into a one-bedroom apartment with a roommate. At the second apartment, Aschemann testified respondents slept on a garbage covered mattress in the kitchen and there was nowhere to sit in the living room because of bags of garbage.

¶ 15    Aschemann testified respondents were rated unsatisfactory for cooperation because it was very difficult to schedule appointments, even though respondents would meet with Aschemann if she called them on the day she wanted to go see respondents. On cross-examination, Aschemann testified the service plan showed respondents were rated satisfactory for cooperation.

¶ 16    Respondent mother completed a parenting class, but she required one-on-one instruction to pass. Respondent mother was unable to implement the parenting skills during visits. When visiting, respondents required prompts to provide appropriate meals, change diapers, and monitor the children. Respondent mother was provided coaching services through a visitation specialist and a "Birth to Three" program that was eventually placed on hold due to lack of progress. Aschemann admitted a number of the visitation worker's notes did not indicate anyone else was present for the visit, but the visits were always supervised by the visitation specialist. Respondent father completed a parenting program but required prompting to provide age-appropriate discipline and games, and he allowed respondent mother to do the majority of

the caretaking. Aschemann testified respondents were rated unsatisfactory for overall progress toward the return of the children.

¶ 17　　In a June 2019 service plan evaluation, respondents were again rated unsatisfactory for housing because they continued to live in the one-bedroom apartment with a roommate. Respondents indicated they were looking for a new place to live but failed to find a new apartment. Respondents were not engaged in any mental health services. Respondent father was rated unsatisfactory for cooperation because he failed to proactively provide information, including information that he stopped working. Aschemann testified there were continued concerns about respondents' parenting skills and the "Parents as Teachers" program suspended services due to lack of progress. The visitation specialist continued to prompt and assist respondents with age-appropriate parenting.

¶ 18　　In November 2018, Aschemann discussed the upcoming psychological evaluations with respondents. Aschemann testified she asked respondents if they had concerns, questions, or difficulties. Respondents were able to get to visits and never indicated a need for bus passes, even though Aschemann offered passes. Aschemann recalled a conversation with respondent father about claiming J.S. on his taxes. Aschemann testified, "He was angry when the subject came up and I informed him that he would not be able to claim them. I believe he told me that he was going to do it anyway and the—something to the effect of the government can find him—can catch him." Respondents did not inquire about the children's well-being.

¶ 19　　According to Aschemann, respondent mother was never employed, although she had a job delivering papers before Aschemann received the case. Respondent father was employed at a factory when Aschemann began working on the case, but he was fired after

correcting a supervisor. Respondent father also briefly worked at the People's Choice Thrift Store.

¶ 20                                  3. *Stacy Bucher*

¶ 21        Stacy Bucher, a child welfare specialist with Chaddock, testified she was assigned the case in July 2019. According to Bucher, the same service plans remained in effect in January 2020. In January 2020, Bucher rated respondents unsatisfactory for housing because they continued to reside in the one-bedroom apartment with a roommate. Bucher rated respondents unsatisfactory for parenting because visits had been suspended and they never inquired about the children. Respondents were rated unsatisfactory for mental health services because neither engaged in any services. Cooperation was also rated unsatisfactory because respondents failed to contact Chaddock.

¶ 22        On February 5, 2020, Bucher had an in-person meeting with respondents. Respondents were still residing in the one-bedroom apartment and Bucher observed "a big pile of dead bugs and empty boxes stacked all over the kitchen." Respondent mother reported the landlord had been in to spray for "a severe roach problem and mice and *** bedbugs." On January 23, 2020, respondents told Bucher they had been working at McDonald's for "several weeks to a month." At the February 5, 2020, meeting, respondent mother was no longer employed. Respondent father was still employed but did not provide paycheck stubs for verification.

¶ 23        The same service plan was in place for June 2020. Respondents were rated unsatisfactory for housing because they continued to reside in the one-bedroom apartment. Respondent mother failed to inform Bucher of a recent move to Payson, Illinois, to live with her mother. Bucher rated respondents unsatisfactory for parenting, cooperation, and mental health

services because they failed to contact Chaddock or engage in services, although respondent mother had seen a psychiatrist.

¶ 24                                      4. *Trial Court's Order*

¶ 25            Following the fitness hearing, the trial court held a separate best interest hearing. In October 2020, the court entered an order finding respondents unfit due to their failure to (1) make reasonable efforts to correct the conditions which were the basis for the removal of the children or (2) make reasonable progress toward the return of the children to the parents within a nine-month period after the adjudication of neglect. The court further found it was in the best interest of the children to terminate respondents' parental rights.

¶ 26            This appeal followed. We docketed respondent mother's appeal with respect to A.A. as case No. 4-20-0544 and with respect to J.S. as case No. 4-20-0546. We docketed respondent father's appeal with respect to J.S. as case No. 4-20-0547. We have consolidated the cases for review.

¶ 27                                       II. ANALYSIS

¶ 28            On appeal, respondents assert the trial court erred by determining they failed to (1) make reasonable efforts to correct the conditions that were the basis of removal and (2) make reasonable progress toward the return of the children to their care.

¶ 29            In a proceeding to terminate parental rights, the State has the burden of proving parental unfitness by clear and convincing evidence. *In re Jordan V.*, 347 Ill. App. 3d 1057, 1067, 808 N.E.2d 596, 604 (2004). In making such a determination, the court considers whether the parent's conduct falls within one or more of the unfitness grounds described in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)). Evidence supporting a finding of unfitness on any ground enumerated in section 1(D) of the Adoption Act (750 ILCS 50/1(D)

- 7 -

(West 2018)) is enough to support a finding of unfitness, even where the evidence may not support an unfitness finding on another ground. *In re C.W.*, 199 Ill. 2d 198, 210, 766 N.E.2d 1105, 1113 (2002). A reviewing court will not overturn the trial court's finding of unfitness unless it is against the manifest weight of the evidence. *Jordan V.*, 347 Ill. App. 3d at 1067. The trial court's decision is given great deference due to "its superior opportunity to observe the witnesses and evaluate their credibility." *Id.*

¶ 30   In this case, the State alleged respondents were unfit on two grounds: they failed to (1) make reasonable efforts to correct the conditions that were the basis for the removal of the children and (2) make reasonable progress toward the return of the minors within any nine-month period after the adjudication of neglect. The State alleged the following three specific nine-month periods: (1) May 11, 2018, to February 10, 2019; (2) February 11, 2019, to November 10, 2019; and (3) September 27, 2019, to June 26, 2020. The trial court found respondents unfit based on the allegations in the State's petition.

¶ 31   On appeal, respondents contend the trial court's finding of unfitness was against the manifest weight of the evidence. We may affirm on any basis in the record, and we need not review all the grounds for a finding of unfitness if we uphold the trial court's findings as to one ground of unfitness. See *In re D.H.*, 323 Ill. App. 3d 1, 9, 751 N.E.2d 54, 61 (2001). As we find the trial court's finding as to reasonable progress dispositive, we begin there.

¶ 32   The trial court's finding that respondents failed to make reasonable progress toward the return of the minors within the following three specific nine-month periods: (1) May 11, 2018, to February 10, 2019; (2) February 11, 2019, to November 10, 2019; and (3) September 27, 2019, to June 26, 2020, was not against the manifest weight of the evidence. Reasonable progress is measured by an objective standard that considers the progress made

toward the goal of returning the child to the parent. *In re M.A.*, 325 Ill. App. 3d 387, 391, 757 N.E.2d 613, 617 (2001). Specifically, reasonable progress includes a parent's compliance with service plans and court directives, in light of the condition that gave rise to the removal of the child. *In re C.N.*, 196 Ill. 2d 181, 216-17, 752 N.E.2d 1030, 1050 (2001).

¶ 33        Here, the children were taken into protective care after respondents failed to demonstrate the ability to adequately care for J.S. following his premature birth. Respondent mother also previously had an intact case following the birth of A.A., her older child. Over the course of the nine-month periods the State specified, respondents were assigned numerous tasks, including finding appropriate housing, seeking mental health services, and completing parenting programs. Respondents never found appropriate housing. At the beginning of the nine-month periods, respondents' apartment was dirty, there were bags of foul-smelling garbage in the house, there were holes in the walls, and the refrigerator did not work. Respondent thereafter moved into a one-bedroom apartment with a roommate where they slept on a garbage-covered mattress in the kitchen. Aschemann testified there was nowhere to sit in the living room because bags of garbage covered all available surfaces. Respondents repeatedly stated they were looking for more suitable housing but failed to follow through. In February 2020, respondents were still residing in the one-bedroom apartment with a roommate, and the landlord had recently treated the premises for a severe problem with roaches, mice, and bedbugs.

¶ 34        In addition to their failure to make reasonable progress toward appropriate housing, respondent mother failed to engage in mental health services. Although she attended one appointment with a psychiatrist in January 2020, she did not engage in any follow up services or counseling, and she had a history of failing to take her medications as prescribed. Respondent father failed to engage in any mental health services.

¶ 35        Moreover, respondents were provided with parenting services, including one-on-one education and visitation specialists supervising their visits. Respondents completed a parenting class but were unable to implement the parenting skills during visits. When visiting, respondents required prompts to provide appropriate meals, change diapers, and monitor the children. Respondent mother was provided coaching services through a visitation specialist and a "Birth to Three" program that was eventually placed on hold due to lack of progress. Respondent father required prompting to provide age-appropriate discipline and games, and he allowed respondent mother to do the majority of the caretaking.

¶ 36        Respondents assert only three visits were attended by a parenting coach and, therefore, the State failed to provide adequate services. However, Aschemann admitted a number of the visitation worker's notes did not indicate anyone else was present for the visit but the visits were always supervised by the visitation specialist. The very fact there were visitation worker's notes indicated the specialist was there and simply was not listed as another person present at the visit.

¶ 37        During the nine-month periods that stretched from May 2018 to June 2020, respondents failed to make any significant progress toward the return of the children. Their housing was inappropriate, and despite repeated assurances they were seeking adequate housing, they never moved to a new apartment or cleaned up the present apartment. Additionally, respondents failed to engage in mental health services and failed to make progress toward appropriate parenting skills. Accordingly, we cannot say the trial court's finding that respondents failed to make reasonable progress toward the return of the children was against the manifest weight of the evidence. Respondents do not challenge the court's best-interest findings. Accordingly, we affirm the judgment of the court.

¶ 38                              III. CONCLUSION

¶ 39            For the reasons stated, we affirm the judgment of the trial court.

¶ 40            Affirmed.