REBECCA BLAKEY, Plaintiff, *v.* ROBERT BLAKEY, Defendant.—(REBECCA COSTELLO *et al.*, Petitioners-Appellants, *v.* PAMELA BLAKEY *et al.*, Respondents-Appellees.)

Fourth District   No. 15289

Opinion filed June 14, 1979.

Gustine & Theivagt, of Carrollton (Charles E. Theivagt, of counsel), for appellants.

G. Ronald Kesinger, of Jacksonville, for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

At issue in this case is one of the most difficult decisions a court ever has to make: whether or not to terminate parental rights. A not-uncommon fact situation is presented. The natural mother, Rebecca, and father, Robert Blakey, were married at a young age. A baby, Pamela, was born shortly thereafter. The parties' marriage labored under such difficulties as living with in-laws, a new baby, the absence of the father on military service, and, of course, very little money. They were divorced when the child was about three years old. The mother retained custody, and has remarried. The mother and her second husband, Patrick Costello, now wish to adopt Pamela who was five at the time the petition for adoption was filed and is now eight. The natural father refuses to consent to the adoption. The Adoption Act provides that a child can be adopted

only if the natural parents consent or if they are shown to be unfit. (Ill. Rev. Stat. 1977, ch. 40, par. 1510, formerly Ill. Rev. Stat. 1975, ch. 4, par. 9.1—8.) The petition to adopt alleges the natural father is unfit because of his abandonment, desertion, neglect, and failure to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare. The father denies that he is unfit. An extensive hearing was held, and the trial court found that the natural father was not unfit. The mother, Rebecca, and her second husband, Patrick Costello, appeal.

■■ ■ The Adoption Act declares that the child's best interests are the prime consideration (Ill. Rev. Stat. 1977, ch. 40, par. 1525, formerly Ill. Rev. Stat. 1975, ch. 4, par. 9.1—20). However, before there can be consideration of the best interests of the child, the legislative scheme contemplates that there must be a finding of parental unfitness. The statute enumerates 12 specific grounds (Ill. Rev. Stat. 1977, ch. 40, par. 1501D, formerly Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1D); four grounds are alleged in this petition. The courts have always paid a great deal of deference to a parent's "inherent right" to the society, care and custody of his child, although such a policy has been severely criticized. (See *In re Adoption of Burton* (1976), 43 Ill. App. 3d 294, 356 N.E.2d 1279.) The standard of proof is heavy; the evidence of unfitness must be clear and convincing. (*In re Gibson* (1975), 24 Ill. App. 3d 981, 322 N.E.2d 223.) The reason is obvious. Termination of parental rights is as drastic and permanent an action as can be taken. The finding of the trial court will not be reversed unless its decision is against the manifest weight of the evidence. The trial court's finding is entitled to great weight, because its opportunity to see and evaluate the parties and their testimony is vastly superior to the opportunity of this court. (*In re Grant* (1975), 29 Ill. App. 3d 731, 331 N.E.2d 219.) The wisdom of this rule is illustrated by this case.

Here we are greatly benefited by an excellent and comprehensive memorandum opinion by the trial court. The evidence in the record was sharply contradictory. Robert, the natural father, and his family testified to numerous attempts to see Pamela. Rebecca and her family flatly denied that Robert had made any attempt whatsoever to see Pamela from the time of the divorce to the time the petition was filed three years later. It is clear that he had no contact with the child during this time in any form, including visits, letters, calls, or gifts. Robert alleged that his failure to take legal action to secure his visitation rights was based on his lack of money and the fact that he still owed money to his lawyer for the divorce. This testimony was somewhat impeached. The factual situation was complicated by the reservation of questions of child support and visitation rights in the divorce decree. Robert interpreted that to mean that the court would initiate action on these issues. He had received

advice from his father not to attempt visitation without a court order or he would jeopardize his position in court, possibly incurring criminal sanctions.

The trial court stated that both the natural parents were guilty in allowing this matter to go undetermined because of their antagonism to each other. The mother had argued that Robert's failure to provide any child support was indicative of his intent to sever relations with the child. However, the trial court found it significant that the divorce decree reserved this question and the mother never really desired child support because of the concomitant contact with her ex-husband.

The court found that there had not been presented clear and convincing evidence of unfitness. A major consideration was the reservation of child support and visitation in the divorce decree, in combination with Robert's passive personality and in advice from his father not to rock the boat. The trial court found that Robert's conduct, although far from admirable, did not under these circumstances amount to unfitness. The testimony as to his efforts to see the child was hopelessly in conflict, but the father was aware that the child was in the custody of her mother and receiving kind and loving attention.

■■ When dealing with cases of this nature, it is not a question of searching for fixed standards or binding precedent. Each case is *sui generis*. (*Grant.*) It is of little use to compare frequency of visits, cards, or gifts with the frequency in other cases. The mother acknowledges that substantially all the evidence was in dispute. We have carefully reviewed the evidence and the mother's argument on it. We cannot find that the trial court's decision was against the manifest weight of the evidence. The fact that the father had been given advice not to attempt visitation can be an important factor. (*Peyla v. Martin* (1976), 40 Ill. App. 3d 373, 352 N.E.2d 407.) That the father was never ordered to pay child support, in conjunction with the failure of the mother ever to request it, can also be important. *Peyla.*

Petitioners contend that the trial court improperly considered *In re Adoption of Walpole* (1955), 5 Ill. App. 2d 362, 125 N.E.2d 645, as controlling. The trial court was greatly concerned about the effect of the reservation of questions of support and visitation in the divorce decree. *Walpole* was the only case cited`to the court where a similar situation existed. The trial court's opinion indicates its reliance on that case, which is understandable as it was the only case which addressed a prominent factor in the case at bar. There is nothing, however, to show that the trial court considered it binding and controlling without regard to the particular circumstances of this case.

Petitioners also argue that the trial court erred in treating the reservation of questions of child support and visitation in the divorce

decree as a bar or mitigating circumstance as a matter of law. We find no indication that this, in fact, is the case. The memorandum opinion merely treats that circumstance as one of the evidentiary factors, albeit an important factor, which tended to show the father was not unfit as alleged. Accordingly, the judgment of the circuit court of Greene County is affirmed.

Affirmed.

REARDON, P. J., and GREEN, J., concur.