KAREN R. PERKINS *et al.*, Petitioners-Appellees, *v.* MELISSA MARIE BREITBARTH *et al.*, Respondents-Appellants.—DANIEL HOFER, Petitioner-Appellant, *v.* KAREN BREITBARTH PERKINS *et al.*, Respondents-Appellees.

Third District   Nos. 80-646, 80-647 cons.

Opinion filed August 14, 1981.—Rehearing denied September 9, 1981.

Larry D. Serene, of Kankakee, for appellants.

Adrienne W. Albrecht, of Kankakee, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Daniel Hofer appeals from the judgment of the Circuit Court of Kankakee County in these proceedings, which judgment in favor of the adoption petitioners David and Karen Perkins terminated Mr. Hofer's parental rights with respect to the minor, Melissa Maria Breitbarth. On appeal he asserts that the court's finding of his unfitness, specifically his failure to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the minor child, was contrary to the manifest weight of the evidence.

The record reveals that Melissa Maria Breitbarth was born on Feb-

ruary 21, 1976, in Kankakee. The natural father of the child was Daniel Hofer, and the natural mother was Karen Breitbarth, now Karen Perkins. At the time of the birth, both parents were 16 years old and unmarried. After the birth of Melissa, her mother continued to reside with her own parents. From the birth in February until October 1976, Daniel Hofer saw the child about three times per week. During that early period he also gave Karen cash for expenses. At trial, Mr. Hofer also testified to paying between $150-$200 toward the medical bills from the birth. Then, in October 1976, Karen and Daniel moved into an apartment together. The cohabitation ended three months later when Karen "threw him out," because he was "never around much" and because he had struck her in the presence of the child. Early in 1977, while in the military service, Daniel Hofer sent Karen $100. However, during most of 1977, Daniel Hofer did not visit Melissa, as Karen had informed him that while he could visit Melissa, she, Karen, wanted nothing more to do with him. In September 1977, according to testimony, Karen would occasionally bring the child to Daniel Hofer's sister's house, where he saw her.

In the fall of 1977, Karen and Melissa moved back in with her parents. Daniel Hofer would occasionally call there and ask to visit with Melissa. When such visitation would take place, however, according to Karen, Daniel Hofer would also make advances toward her. In September 1978, Karen moved into an apartment of her own. Daniel Hofer did not come to visit or call, nor did he send anything to either Karen or Melissa. Since that time, he has not visited or called, nor provided support for the child.

Other evidence indicated that during the years following 1976, Daniel Hofer held a variety of jobs and made respectable earnings. During 1977 through 1979, a time in which he provided no support, he had a take home pay of approximately $187 per week. The evidence at trial also indicated that Karen and her parents paid the majority of the expenses for the birth.

Based upon the evidence in the record, the trial court made several findings of fact. The court found that Daniel Hofer had made only token contributions toward the medical expenses of the birth. It also found that only minimal support payments were made during the early years of 1976 and 1977, and that thereafter no contributions were made by Daniel Hofer toward the support of the child. The lack of contributing support occurred despite a financial situation which would have allowed Mr. Hofer to make such contributions toward the support of his child. In addition to these findings unfavorable to Daniel Hofer, however, the court also made findings favorable to him. The court found that he had made reasonable efforts to visit the child and that, to a considerable extent, his efforts to visit the child had been frustrated by lack of cooperation from the child's mother. Similarly, the court found that his efforts

to show attention by cards or gifts, while not overpowering, also suffered from a lack of cooperation by the child's mother. It is also noted that Mr. Hofer filed two petitions seeking visitation rights with his daughter, the second of which was considered by the trial court along with the adoption petition, and was denied.

The trial court, in rendering its judgment in the proceedings, noted that the crucial issue was whether Daniel Hofer had failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare. (Ill. Rev. Stat. 1977, ch. 40, par. 1501(D)(b).) In resolving that issue, the court determined that despite Mr. Hofer's demonstrated interest and concern in the child, as evidenced by his attempts to visit the child, nevertheless, his failure to provide any support for the child, for a period of two years when he was financially capable of providing such support, was a sufficient basis upon which to find him unfit as a parent.

Accordingly, on the basis of his lack of support during that time, the court adjudged Mr. Hofer unfit and granted David and Karen Perkins the adoption, thus terminating all rights that Mr. Hofer might have, as a parent, in the minor child. Mr. Hofer appeals from the judgment and argues that the court's decision as to his unfitness is contrary to the manifest weight of the evidence.

■■ The rules regarding adoption cases of this nature are well settled. As stated in *In re Woods* (1977), 54 Ill. App. 3d 729, 733-34, 369 N.E.2d 1356:

> "It is well recognized that the natural parent has superior rights to the custody of his child as against others. [Citations.] This inherent right therefore should not be abrogated absent compelling reasons. [Citation.] One of these reasons is parental 'unfitness' demonstrated by a parent's '[f]ailure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare.' [Citation.] The State must meet this burden by clear and convincing evidence. [Citation.] It has also been recognized that cases of this nature are *sui generis*; each must be decided in accordance with the particular facts of each individual and varying situation. [Citation.] Hence, in matters involving children and particularly in instances such as the one before us dealing with the permanent severance of parental rights, the facts must be reviewed with careful scrutiny." (See also *Blakey v. Blakey* (1979), 72 Ill. App. 3d 946, 947, 391 N.E.2d 222.)

While reviewing courts will not substitute their judgment for those of the trial court when the court's judgment is supported clearly in the record, reversal is required where the trial court's decision is contrary to the manifest weight of the evidence. (*Peyla v. Martin* (1976), 40 Ill. App. 3d 373, 352 N.E.2d 407.) Emphasis is placed upon the heavy burden of proof in such matters, wherein unfitness must be shown by clear and convincing

138

evidence. (*Blakey v. Blakey* (1979), 72 Ill. App. 3d 946, 947; *In re Barber* (1977), 55 Ill. App. 3d 587, 590, 371 N.E.2d 299.) As the court noted in *Blakey*, "[t]he reason is obvious. Termination of parental rights is as drastic and permanent an action as can be taken." 72 Ill. App. 3d 946, 947.

■■ The issue in this appeal is whether the clear and convincing evidence in the record established Daniel Hofer's failure to maintain a reasonable degree of interest, concern or responsibility in his daughter Melissa, and thereby established his unfitness as a father. Only after this finding is established can the court consider the best interests of the child. *Freeman v. Settle* (1979), 75 Ill. App. 3d 799, 802, 393 N.E.2d 1385; *In re Adoption of Burton* (1976), 43 Ill. App. 3d 294, 301, 356 N.E.2d 1279.

While each adoption case, as indicated above, must be considered on its own individual facts and circumstances, nevertheless, the cases are helpful in setting forth important considerations which need be applied. In *Peyla v. Martin*, a father was adjudged by the trial court to be unfit, based upon abandonment and upon a failure to maintain a reasonable degree of interest, concern or responsibility. In that case, the father, a parolee, had given no support for the child for a period of 15 months and had not visited the child. The appellate court, in reversing the finding of unfitness, found it important that the father's efforts to visit the child had been frustrated by his circumstances. The court also found it important to consider, on the issue of lack of financial support, that the father was never ordered to pay support, that he was not in a financial position to give support, and that his meager efforts to support were refused by the child's mother. (40 Ill. App. 3d 373, 377-78.) In *Blakey v. Blakey*, the court, in affirming a denial of an adoption petition, also indicated that lack of a support order, coupled with a failure by the mother to request support, were important considerations in drawing conclusions from a father's failure to provide financial support for his child. (72 Ill. App. 3d 946, 948.) One older case also indicated that a failure to support would not alone be held to establish unfitness, and that the failure to support would have to be examined in light of all the circumstances. *Carlson v. Oberling* (1966), 73 Ill. App. 2d 412, 218 N.E.2d 820.

■■ In the instant case, the finding of unfitness was premised entirely upon Daniel Hofer's failure to provide financial support for his child for a period of over 2 years. While not condoning in any way this failure, it is important to consider that during that time Daniel Hofer was not under a court order to make support, nor did the child's mother request his financial help in supporting the child. From the record, it is clear that she in fact discouraged any contact between Mr. Hofer and her or the child. Also, it is to be noted that the record does not indicate that the child's mother was in such financial straits that the welfare of the child suffered from the lack of support by Mr. Hofer. Even with these countervailing

considerations, however, an adjudication of unfitness, based upon the lack of support, might be upheld, if the other facts and circumstances did not indicate Daniel Hofer's interest and concern in the child. Two important factual findings by the trial court are of considerable significance in this regard. The court specifically found that Daniel Hofer had made reasonable efforts to visit the child, and that the efforts were, to a considerable extent, frustrated by the lack of cooperation from the natural mother. These findings are supported in the evidence. Given them, coupled with the aforementioned considerations concerning the lack of support for the two-year period, we find that the evidence in the record is insufficient to support the trial court's conclusion that Mr. Hofer's unfitness was proven by clear and convincing evidence.

The case principally relied upon by the appellees in arguing for an affirmance is easily distinguished. In *Freeman v. Settle* (1979), 75 Ill. App. 3d 799, 393 N.E.2d 1385, the natural father's unfitness was clearly and convincingly shown. He had failed to exercise his rights to reasonable visitation for a period of six years, had failed to communicate with the child for two years, and had failed to provide support for over six years. In addition, he had executed a consent to adoption for the purpose of escaping his support obligations. Even though the court found that consent had lapsed, it held that his action, combined with the other facts, indicated and established his lack of interest, concern or responsibility for the welfare of the child. That factual situation is not closely or remotely analogous to the one presented in the instant case. The other cases cited by the appellees are also unpersuasive.

We would add that decisions in cases such as this are the most difficult any court must make. We are aware that our decision herein may not be in the best interests of the child. If that were the issue, we would affirm the judgment entered by the trial court. However, the question of the child's best interests is not the principal issue before us on this appeal. As noted previously, before reaching that question, those seeking adoption must establish by clear and convincing evidence that the natural parent of the child is unfit. Such a finding of unfitness, supported firmly by the evidence, is a prerequisite to addressing the question of the child's best interests. While we may prefer a contrary rule, it is nevertheless the established rule of law in Illinois and we must follow it.

To summarize briefly, the evidence in the case indicated that the father (who was merely 16 years of age at the time of the child's birth) had shown interest in the child and had provided some support during the early part of the child's life. Thereafter, his attempts to visit the child and remain in contact with her were, as the trial court found, frustrated by the child's mother. Perhaps understandably, she wanted nothing more to do with Mr. Hofer and discouraged any contact between him and his

daughter. Faced with the mother's opposition, Mr. Hofer, perhaps equally understandably, ceased his attempts to visit the child and also ceased contributing support of any kind. While, by law, there is no reciprocal relation between visitation rights and support duties, the layman often views them as connected. In any event, support was stopped by Mr. Hofer, and he was not ordered to make payments nor was he requested to provide support. The mother, it will be remembered, wanted nothing more to do with Mr. Hofer. Then, on two occasions Mr. Hofer sought to obtain his visitation rights to the child and therein also voluntarily acknowledged to the courts his duty to provide support and voluntarily requested that it be imposed upon him by the courts. The evidence in the record, viewed in its entirety, does not clearly and convincingly demonstrate Mr. Hofer's unfitness as a parent. Therefore, the judgment to the contrary must be reversed.

We reverse the judgment of adoption in the adoption proceeding, and we remand for the court to make a determination of Mr. Hofer's reasonable visitation rights and his support obligations.

Reversed and remanded.

STOUDER, J., concurs.

Mr. JUSTICE HEIPLE, dissenting:

I cannot agree with the result reached by the majority. The record here solidly supports the trial court's finding that Daniel Hofer was unfit due to "failure to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare."

The error of the majority is that they view the issue to be one requiring a showing of mere interest in the child. Even so, the record provides only the most meager evidence of such a general interest. However, such standard is at once too broad and too flimsy. The trial court properly noted that with respect to "interest," "concern," or "responsibility," the focus is *not* the child in a general sense. Rather, what is statutorily required is interest, concern, or responsibility in the child's *welfare*. The importance of financial support in demonstrating concern for a child's welfare is clear. The welfare of a child necessarily includes the purchasing of hospital and medical services for pre- and post-natal care, food, clothing, and shelter. These can only be purchased with money. Hofer's sparse financial contribution to secure his daughter's healthy birth and the mere necessities of life clearly demonstrates his unfitness. The majority notes that the welfare of the child never suffered from lack of support by Hofer. This is due to the fact that both mother and daughter were welfare recipients for a period of time. Fortuitously,

the maternal grandparents were financially able to pay most of the expenses attendant with the child's birth. While Hofer's income was very low at this time, within a year or so it increased to $300 gross income per week. During the two-year period that his income remained at this level, he made no contributions of support to secure his child's welfare. Although Hofer was under no court order to provide support, this does not vitiate the statutory standard for parental unfitness. A father should not have to be told that he should support his child. With the rights of fatherhood, so go the duties. While Hofer exhibited "interest in the child" by reason of his early sporadic efforts to visit her and the delivery of a card and gift on one birthday, something substantially more is required to show interest, concern, or responsibility for her welfare. The child was born out of wedlock to two 16-year-old parents on February 21, 1976. As the majority opinion notes, from September 1978, to the date of filing of the adoption petition on December 4, 1979, Hofer neither visited or provided support for the child. Hofer did not fulfill his parental duty of support, interest, and concern and should therefore be barred from exercising his parental rights.

For these reasons I believe the trial court's finding of Hofer's unfitness was correct. I would affirm the judgment in favor of the adoptive parents, they being the natural mother and her husband. The natural father has forfeited his rights of visitation.