*In re* V.S., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v. William W., Respondent-Appellant).

Third District   No. 3—96—0340

Opinion filed December 5, 1996.

James Andreoni, Assistant Public Defender, of Princeton, for appellant.

Marc Bernabei, State's Attorney, of Princeton (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

The trial court found the respondent, William W., to be an unfit parent and terminated his parental rights. The issue on appeal is whether the trial court improperly allowed the State to introduce evidence of the child's best interest prior to a finding of unfitness. For reasons that follow, we reverse.

## FACTS

On September 21, 1992, William, a resident of the Department of Corrections, consented to orders adjudicating V.S. dependent and placing her in the custody of the Department of Children and Family Services (DCFS) for care and services. On December 20, 1993, four months after William's release from prison, the State filed a petition to terminate his parental rights. The petition alleged that William was an unfit parent because he (1) abandoned V.S.; (2) failed to maintain a reasonable degree of interest, concern or responsibility as to V.S.'s welfare; (3) showed his intent to forego parental rights by failing for a period of 12 months to visit V.S., although not prevented from doing so by an agency or by court order, or to maintain contact with her or plan for her future; and (4) failed to provide V.S. with adequate food, clothing or shelter, although physically and financially able (750 ILCS 50/1(D)(a), (D)(b), (D)(n)(1), (D)(o) (West 1994)).

Prior to the hearing on the petition, counsel for William moved to exclude testimony relating to William's sexual misconduct with his three sisters. The court denied William's motion, and the cause proceeded to a unified hearing on parental unfitness and the best interest of the child.

Over counsel's objection, William's three sisters, Sandra W., Catherine P. and Michelle W., each testified that William had performed various sexual acts with them between the mid-1970's and the early 1980's, while William and his sisters were all children and living with their mother and stepfather. Following their testimony, V.S.'s mother, Cindy V., testified that V.S. was born August 28, 1988, and William had seen her only twice, once in 1989 and once in 1991. William was subsequently incarcerated from March 22, 1992, until August 16, 1993, for aggravated battery and forgery.

DCFS caseworker Tru Wahlgren testified that four service plans were mailed to William between the date of his release from prison and the date of the hearing, only one of which was sent before the State filed its petition to terminate parental rights. Wahlgren admitted that it was DCFS' goal at all times to terminate William's parental rights and not to reunite him with V.S. She said that her records indicated that William attended only one service plan meeting, and he did not complete the tasks assigned in the plans. She denied telling William that the State would terminate his parental rights no matter what he did.

In his defense, William testified that his attempts to visit V.S., when he was not in prison, were frustrated by Cindy and DCFS. He said that he tried several times to see the child, but Cindy and her boyfriend refused to let him. William said Cindy moved frequently. She did not tell him where she was living, and at times she did not have a telephone. He said he offered to pay child support, but Cindy would not consider it and told him that she had given the child up for adoption. William also testified that he attended two of the service plan meetings, but stopped because Wahlgren told him that DCFS intended to terminate his parental rights regardless of what he did.

Melanie Girts, William's current girlfriend, testified that she attended a service plan meeting with William in the fall of 1994. She said that they asked Wahlgren whether the termination proceedings would be dropped if they completed all of the tasks in the plan, and Wahlgren replied that it would make no difference.

At the close of all evidence, the court granted the State's petition to terminate parental rights. In a written order, the court stated:

> "Based on the evidence taken and its experience, the Court has made assessments as to the true credibility and intentions of all of the parties and has considered very carefully the best interest of the minor and all of those touched by this case. This Court has determined that the Petition to Terminate Parental Rights is well taken. Although Mr. [W.] has espoused continuing interest in the child, it is the Court's finding that in reality he is unfit and has fully refused to take the steps required of him to develop a relationship with the child, specifically for extended period [*sic*] as required by statute he has failed to cooperate with the Department of Children & Family Services in virtually any way. *** William [W.]'s parental rights *** are ordered terminated."

## DISCUSSION AND ANALYSIS

On appeal, William argues that the trial court improperly considered the testimony of his sisters before reaching a determina-

tion of unfitness. The State does not attempt to argue that evidence of William's sexual conduct with his sisters was relevant to any of the grounds of unfitness alleged in the petition to terminate parental rights. Clearly, it was not. Instead, the State contends that the court did not commit reversible error because the record does not demonstrate that the trial judge considered incompetent evidence in finding William unfit.

■ Before terminating parental rights, the State must establish unfitness by clear and convincing evidence. *Perkins v. Breitbarth*, 99 Ill. App. 3d 135, 138, 424 N.E.2d 1361, 1364 (1981). A determination of unfitness may be made only upon consideration of evidence relevant to the grounds alleged in the State's petition. *In re Adoption of Syck*, 138 Ill. 2d 255, 277, 562 N.E.2d 174, 184 (1990). Evidence of the parent's past conduct is admissible at the unfitness hearing only if relevant to the grounds charged in the State's petition. *In re Adoption of A.S.V.*, 268 Ill. App. 3d 549, 557, 644 N.E.2d 500, 505-06 (1994). It is not until after a parent has been found to be unfit that the court may consider evidence of the child's best interest. *Syck*, 138 Ill. 2d at 277, 562 N.E.2d at 184.

■ A single hearing consolidating issues of unfitness and best interest carries a risk of prejudice from considering evidence irrelevant to the unfitness question before determining that issue. See *Syck*, 138 Ill. 2d at 275-76, 562 N.E.2d at 183. To ensure a proper focus, separate hearings are mandatory. *In re A.P.*, 277 Ill. App. 3d 592, 600, 660 N.E.2d 1006, 1012 (1996). The trial judge may hear best interest evidence immediately after the unfitness hearing. *In re B.R.*, 282 Ill. App. 3d 665, 671, 669 N.E.2d 347, 352 (1996).[1]

■ Separate hearings are clearly the better procedure (see *In re Dalton*, 98 Ill. App. 3d 902, 906, 424 N.E.2d 1226, 1228 (1981)), because they avoid the possibility of prejudice to a respondent. Therefore, unless it clearly appears that no prejudice resulted, the conduct of a single hearing commingling the issues is reversible error. To establish prejudice resulting from a consolidated hearing, a respondent must show: (1) that a timely objection was made in the trial court (*In re Jackson*, 243 Ill. App. 3d 631, 656, 611 N.E.2d 1356, 1373 (1993)); (2) that there is reason to believe that the trial court considered incompetent evidence in its unfitness determination (*In re J.W.*, 187 Ill. App. 3d 988, 998, 543 N.E.2d 974, 980 (1989)); and (3) that the er-

---

[1]Even successive hearings can be problematic if the record does not disclose that the unfitness determination was made prior to the court's consideration of the child's best interest. See *A.P.*, 277 Ill. App. 3d at 600, 660 N.E.2d at 1012.

roneous commingling of evidence of the parent's unfitness and the child's best interest was not harmless error. *In re R.G.*, 165 Ill. App. 3d 112, 132, 518 N.E.2d 691, 703 (1988).

■ In this case, William's attorney timely objected to the conduct of a unified hearing prior to the introduction of any evidence of unfitness, when he moved to exclude the testimony of William's three sisters. In response to the State's argument that the testimony was relevant to the child's best interest, counsel specifically stated that he was prepared to proceed only on the issue of unfitness, not on best interests. However, the court denied William's motion with no explanation and immediately proceeded to hear the contested testimony.

Further, the record does not indicate that the court understood that a finding of William's unfitness was a prerequisite to considering V.S.'s best interest. On the contrary, both the sequence in which the court allowed the evidence to be presented at the hearing and the court's written order indicate that issues of unfitness and the child's best interest were impermissibly commingled. In addition, we note that the court did not state that evidence of unfitness was "clear and convincing." Accordingly, we may not rely on a presumption that the court considered only competent evidence in finding William unfit. See *J.W.*, 187 Ill. App. 3d 988, 543 N.E.2d 974.

Finally, we do not find that the evidence of unfitness was so overwhelming that any error was harmless and further proceedings would be unnecessary. From the court's order, it appears that the finding of unfitness was based primarily on William's failure to cooperate with DCFS. In this regard, Wahlgren alluded to service plans and said that William had not completed the tasks assigned to him. However, the plans were not introduced into evidence, and the record does not reveal what tasks William was asked to perform before the State initiated termination proceedings. William explained why he did not work with the agency after his release from prison, testifying that DCFS was not interested in his efforts to develop a relationship with V.S. His testimony was corroborated by his girlfriend as well as by Wahlgren's admission that DCFS' goal was always to terminate William's parental rights, never to reunite him with V.S. Based on the record, we cannot say that the evidence of unfitness was so overwhelming that no prejudice resulted from the consolidated hearing. William's failure to cooperate with DCFS or complete its service plans might not, by itself, require a finding of unfitness. See *In re T.D.*, 268 Ill. App. 3d 239, 643 N.E.2d 1315 (1994). Thus, we cannot conclude that the trial court would have found sufficient evidence of William's unfitness without considering improperly admitted

testimony of his childhood sexual misconduct. See *Perkins*, 99 Ill. App. 3d 135, 424 N.E.2d 1361.

## CONCLUSION

The judgment of the circuit court of Bureau County is reversed, and the cause is remanded for a new unfitness hearing.

Reversed and remanded.

HOLDRIDGE, P.J., and McCUSKEY, J., concur.