NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250392-U

NO. 4-25-0392

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 28, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Adoption of D.G., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (Case M. and Brittney M., | ) | Ford County |
| Petitioners-Appellees, | ) | No. 24AD1 |
| v. | ) | |
| Cory G., | ) | Honorable |
| Respondent-Appellant). | ) | Matthew J. Fitton, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Knecht and Grischow concurred in the judgment.

**ORDER**

¶ 1   *Held*: (1) Respondent was not denied his right to counsel; (2) the unfitness finding was not erroneous; and (3) any error in failing to bifurcate the fitness and best-interest hearings was harmless.

¶ 2   Respondent Cory G. appeals from a judgment of the trial court terminating his parental rights and allowing his son D.G. to be adopted by petitioner Case M., D.G.'s stepfather. Respondent argues that (1) he was denied his right to counsel where appointed counsel did not communicate with him and the court denied a continuance for him to retain counsel, (2) the unfitness finding was erroneous, and (3) the court erred in failing to bifurcate the fitness and best-interest portions of the hearing. Petitioners argue that this court lacks jurisdiction. We affirm.

¶ 3                          I. BACKGROUND

¶ 4   D.G. was born to petitioner Brittney M. and respondent in 2018. The two were never married, but respondent was listed on the birth certificate as D.G.'s father. Subsequently,

respondent was incarcerated, and Brittney married petitioner Case M.

¶ 5    In February 2024, Brittney and Case (collectively petitioners) filed a petition for adoption requesting that the trial court terminate respondent's parental rights and allow Case to become D.G.'s adoptive father. The petition alleged that respondent was an unfit parent pursuant to section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2024)) because he was depraved (1) in that he had been convicted of at least three felonies, with at least one of those convictions occurring in the last five years, and (2) due to an ongoing course of conduct, including the aforementioned convictions, as well as a pattern of domestic abuse evidenced by numerous orders of protection and violations of those same orders.

¶ 6    In March 2024, respondent, *pro se*, filed responsive pleadings that requested, among other things, the appointment of counsel. Attorney Harvey Welch of the Ford County Public Defender's Office was appointed as respondent's counsel.

¶ 7    Afterwards, a pleading from respondent was filed that was evidently mailed on December 4, 2024, and file-stamped by the clerk on January 6, 2025. The pleading stated that respondent had previously filed a request for substitution of counsel in November 2024 due to appointed counsel's alleged conflict of interest and ineffective assistance. Further, it asserted, "[I]n no way is Harvey Welch permitted to represent [respondent] and is fired/barred from doing so." Respondent then requested that his pending pleadings be "heard *pro-se* or adopted *** [and] heard *** with appropriate counsel." The record does not reflect a November 2024 filing for substitution of counsel, but we take judicial notice that there is a filing in the related Ford County case No. 20-OP-22, dated November 18, 2024, stating, "Entry of appearance for counsel *PRO SE*."

¶ 8    An order of *habeas corpus* issued for respondent's appearance, and on February 20, 2025, the trial court held a hearing on the adoption petition with respondent in court.

Respondent informed the court that he did not want his appointed counsel to represent him, citing alleged issues in a previous matter. Welch confirmed respondent's representation that the two had not spoken about this case, noting that his office had received communication that respondent did not wish to be represented by him. The court found no basis to conclude that appointed counsel was incompetent or incapable of handling the matter. Respondent sought a three-to-four-month continuance to obtain private counsel, but he admitted that he had not previously contacted any attorneys about possibly representing him. The court denied the request. Respondent waived appointed counsel and proceeded *pro se*. Throughout the proceedings, respondent continuously objected, and the court repeatedly overruled, the denial of his request for a continuance to seek private counsel.

¶ 9        During the hearing, petitioners submitted evidence of respondent's prior convictions. This included a (1) certified sentencing order following respondent's guilty plea to a violation of an order of protection (a Class 4 felony) in Ford County case No. 20-CF-40; (2) certified copy of a conditions of probation order for criminal trespass to residence (a Class 4 felony) in Peoria County case No. 14-CF-106; and (3) certified copy of the bills of indictment and sentencing order following a jury's finding of guilt for (a) home invasion (a Class X felony); (b) domestic battery (a Class 4 felony); and (c) violation of an order of protection (a Class 4 felony) in Peoria County case No. 21-CF-824. Respondent objected on the basis that there was a pending appeal in case No. 21-CF-824, but that objection was overruled. Also introduced were a certified probation order for unlawful possession of a converted motor vehicle (a Class 2 felony) in Tazewell County case No. 14-CF-494 and a certified sentencing order for criminal trespass, domestic violence (a Class 6 felony under Arizona law) in Pima County, Arizona, case No. CR20151041-001. Additionally, petitioners submitted multiple orders of protection that had been

entered against respondent over the years and an inmate status lookup on the Illinois Department of Corrections' website for respondent that showed his projected parole date as January 17, 2035.

¶ 10　　　　After both petitioners and respondent testified, the trial court gave its ruling. It considered the exhibits and testimony and found that both the statutory and common-law definitions of depravity had been proven. The court granted the petition and stated that it would make a docket entry of its judgment but asked petitioners' counsel to draft and submit a written order. Counsel for petitioners stated he would see if he had an order that "works." The hearing concluded with the court commenting on petitioners' counsel using "White Out" and whether he needed a pen. The docket sheet in the record contains an entry dated February 24, 2025, that states "Judgment of Adoption entered, See judgment." The docket entry does not indicate that the judgment had already been filed.

¶ 11　　　　This appeal followed.

¶ 12　　　　　　　　　　　　　　　II. ANALYSIS

¶ 13　　　　On appeal, respondent argues that (1) he was denied his right to counsel where appointed counsel did not communicate with him and the trial court denied his request for a continuance to retain substitute counsel, (2) the unfitness finding was erroneous, and (3) the court erred in failing to bifurcate the fitness and best-interest portions of the hearing. Petitioners argue that this court lacks jurisdiction.

¶ 14　　　　　　　　　　　　　　　A. Jurisdiction

¶ 15　　　　We first address petitioners' jurisdictional argument. See *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998) ("A reviewing court must be certain of its jurisdiction prior to proceeding in a cause of action."). Appellate jurisdiction is a question of law that we review *de novo*. *People v. Salem*, 2016 IL 118693, ¶ 11.

- 4 -

¶ 16        Petitioners object to the timeliness of the notice of appeal filed by respondent's appellate counsel on March 25, 2025. The timely filing of a notice of appeal is mandatory and jurisdictional. *Village of Chatham v. Springfield Airport Authority*, 2025 IL App (4th) 241112, ¶ 15. A notice of appeal is timely when it is filed "within 30 days after the entry of the final judgment appealed from." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). Because the trial court here required the submission of a draft judgment order when announcing judgment, "the judgment [became] final only when the signed judgment [wa]s filed." Ill. S. Ct. R. 272 (eff. Jan. 1, 2018). As such, the parties' dispute turns on whether "entry of the final judgment" occurred on February 20, 2025 (the date reflected on the file stamp of the judgment order itself), or February 24, 2025 (the date reflected on the court docket).

¶ 17        Petitioners have this to say about the discrepancy:

> "Appellant's Statement of Jurisdiction is falsified and wrongful. Appellant states 'The circuit clerk entered a final appealable order terminating respondent's parental rights on February 24, 2025. [Citation.] This statement is false as the Circuit Clerk entered and file-stamped the Judgment of Adoption on February 20, 2025, *NOT* February 24, 2025. [Citation.] Appellant's citation to the Record at C2 is to the Common Law Record created by himself and including the same falsehood." (Emphasis in original.)

¶ 18        Petitioners' accusation that the common-law record was "created by [respondent]" is itself factually incorrect; the common-law record was prepared and certified as accurate by the circuit clerk. See Ill. S. Ct. R. 324 (eff. July 1, 2017). And while the record on appeal is *presumed* to be true and correct, that presumption can be rebutted when the record is contradictory, given that no system of recordkeeping is foolproof. Ill. S. Ct. R. 329 (eff. July 1, 2017) (providing for

the correction of the record); see *People v. Wear*, 371 Ill. App. 3d 517, 525 (2007), *aff'd*, 229 Ill. 2d 545 (2008) (noting that an inaccuracy in the record can be corrected by reference to another part of the record).

¶ 19        Here, in addition to the file-stamped judgment of adoption, the record includes the February 24, 2025, docket entry stating, "Judgment of Adoption entered," as well as the table of contents, which identifies the filing date of the judgment as February 24, 2025. See Supreme Court of Illinois, *Standards and Requirements for Electronic Filing the Record on Appeal* (eff. Jan. 1, 2021) (providing that the table of contents was required to "identify the filing date of each document"). Given the conflicting information we have received from the circuit clerk, this may present the exceptional situation where the file stamp fails to reflect the date the order was actually placed in the court file and therefore entered as a matter of public record under the public-expression doctrine. See *People v. Perez*, 2014 IL 115927, ¶ 20 (citing *Commonwealth Loan Co. v. Baker*, 67 Ill. App. 2d 359 (1966)). As such, respondent's claim that the circuit clerk entered the judgment on this date cannot be described as "falsified" or "wrongful."

¶ 20        Where the evidentiary support for our jurisdiction is conflicting, it can be appropriate to remand for the trial court to resolve the uncertainty. Ill. S. Ct. R. 329 (eff. July 1, 2017); *People v. Jones*, 2025 IL App (2d) 250003, ¶ 26 (remanding under Rule 329 to resolve a material contradiction between a written order and corresponding docket entry). Under the circumstances of this case, however, a remand is unnecessary because we agree with the alternative basis for jurisdiction advanced in respondent's reply brief.

¶ 21        Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017) provides that "[t]he notice of appeal may be filed by any party *or* by any attorney representing the party appealing, regardless of whether that attorney has filed an appearance in the circuit court case being appealed."

(Emphasis added.) Respondent was a self-represented party before the trial court and was incarcerated and exempt from e-filing (Ill. S. Ct. R. 9(d)(1)(A) (eff. Sept. 1, 2024)), so "the time of mailing" his notice of appeal "shall be deemed the time of filing," even though the circuit clerk did not receive the notice of appeal until April 2, 2025, *i.e.*, after the due date. Ill. S. Ct. R. 373 (eff. Feb. 1, 2024). Because respondent mailed his notice of appeal on March 10, 2025, and included a certificate that complied with Illinois Supreme Court Rule 12(b)(6) (eff. July 1, 2017), his notice of appeal was timely and sufficient to confer jurisdiction on this court whether the judgment of adoption was entered on February 20 or 24, 2025. *People v. English*, 2023 IL 128077, ¶ 36. As such, we will consider respondent's arguments on the merits.

¶ 22        We do pause to note that this decision was due "within 150 days after the filing of the notice of appeal" absent a finding of good cause. Ill. S. Ct. R. 311(a) (eff. July 1, 2018). In this case, it is not immediately clear whether the 150-day clock started on March 10, March 25, or April 2, 2025. Assuming without deciding that this decision is overdue, we nevertheless find good cause for the delay because technical issues prevented this court from receiving either notice of appeal from the circuit clerk until April 23, 2025.

¶ 23                                B. Right to Counsel

¶ 24        Next, we address respondent's contentions that he was denied his right to counsel.

¶ 25               1. *The Right to Appointed Counsel Under the Adoption Act*

¶ 26        The United States Supreme Court has held that the fourteenth amendment does not "require[ ] the appointment of counsel in every parental termination proceeding" brought by the State, but "due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review." *Lassiter v. Department of Social Services*, 452 U.S. 18, 31-32 (1981).

- 7 -

¶ 27    However, section 1-5(1) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-5(1) (West 2024)) provides that any indigent parent who is alleged to be unfit by the State has the right to appointed counsel on request. This blanket right exists "not because the due process clause of the Illinois or United States Constitutions mandates it, but because the legislature has chosen to guarantee the assistance of counsel to indigent parents rather than requiring courts to engage in the case-by-case determination" of whether the appointment of counsel is necessary as a matter of due process. *In re Adoption of K.L.P.*, 198 Ill. 2d 448, 461 (2002); see *Lassiter*, 452 U.S. at 31 (explaining that the trial court must ordinarily weigh the competing interests of the parent and the State under *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

¶ 28    Despite a discrepancy between the *language* of the Juvenile Court Act and the Adoption Act, we have employed the same analysis to the right to appointed counsel under both. See *In re Adoption of L.T.M.*, 214 Ill. 2d 60, 78 (2005) (finding the right to "appointed counsel under the Adoption Act as well"); see also 750 ILCS 50/2.1 (West 2024) (providing that the acts "shall be construed in concert"). Furthermore, because "the statutory right to counsel in proceedings under the Juvenile Court Act *** is closely linked to its constitutional counterpart" in criminal cases, we often look to criminal cases as a guide for our analysis. *In re Br. M.*, 2021 IL 125969, ¶ 42.

¶ 29                    2. *Respondent's Right to Counsel*

¶ 30    Respondent argues as follows:

    "The failure of appointed counsel to communicate with the respondent rendered that representation ineffective, and the trial court's refusal to continue the matter to permit respondent to obtain *** a private attorney, or to allow more time for his appointed attorney to communicate with him, violated both the letter and the

spirit of section 1-5(1). Proceeding under these circumstances was error."

¶ 31 We first address the lack of communication between respondent and Welch, then we address the trial court's refusal grant a continuance so that respondent could retain a private attorney.

¶ 32 a. Appointed Counsel

¶ 33 Under the Juvenile Court Act, the right to the assistance of counsel implies the effective assistance of counsel. *Id.* In criminal cases, courts have sometimes found that an irretrievable breakdown in attorney-client communications resulted in a denial of the effective assistance of counsel, "even where the breakdown [wa]s a result of the defendant's refusal to speak to counsel, unless the defendant's refusal to cooperate demonstrate[d] 'unreasonable contumacy.' " *Daniels v. Woodford*, 428 F.3d 1181, 1198 (9th Cir. 2005) (quoting *Brown v. Craven*, 424 F.2d 1166, 1169 (9th Cir. 1970)); see *United States v. Volpentesta*, 727 F.3d 666, 673 (7th Cir. 2013) (explaining that a denial of the sixth amendment right to counsel will be found only upon a showing of prejudice attributable to an attorney-client conflict "so great that it resulted in a total lack of communication preventing an adequate defense").

¶ 34 Irrespective of whether or how that principle should apply in this context, however, we disagree with respondent's contention that the trial court refused to allow him more time to communicate with Welch. The court expressly offered respondent an opportunity to meet with Welch on the day of the hearing, and we must presume that if their conversation revealed a legitimate reason for the court to appoint a replacement for Welch or delay the hearing so that Welch could prepare respondent's defense, the court would have appropriately exercised its discretion to grant a continuance if necessary. See *Bicek v. Quitter*, 38 Ill. App. 3d 1027, 1030 (1976) ("It is well settled that there is no presumption of abuse of discretion by a trial court.").

¶ 35        Consequently, the question is not whether Welch was ineffective for a lack of communication with respondent but whether respondent waived his right to the effective assistance of appointed counsel by refusing the trial court's offer to meet with Welch. In a similar context, the supreme court explained: "Commensurate with Illinois's statutory right to appointed counsel in postconviction proceedings is a defendant's ability to waive that right, so long as [his] waiver is voluntary, knowing, and intelligent." *People v. Lesley*, 2018 IL 122100, ¶ 50. "[S]o long as the circuit court has given the defendant sufficient opportunity to have the assistance of appointed counsel, defendant's actions that have the effect of depriving [him] of appointed counsel will establish a knowing and intentional choice." *Id.* ¶ 52. We believe the same principle should apply to the statutory right to counsel under the Juvenile Court Act. See *In re Davion R.*, 2019 IL App (1st) 170426, ¶ 69 (noting that the Juvenile Court Act allows for a waiver of counsel in general).

¶ 36        We find that the trial court gave respondent sufficient opportunity to have the assistance of appointed counsel. Respondent requested and was appointed counsel, who he then "fired" approximately four months prior to the hearing at issue. Even with the prior "firing" of appointed counsel, the court at the hearing offered respondent the opportunity to speak with counsel prior to proceeding. Respondent declined this opportunity, and the court informed respondent of the consequences of his discharge of counsel. As such, we find that respondent's refusal to meet with appointed counsel and proceed *pro se* was a knowing and intelligent choice. Because respondent validly waived his right to appointed counsel, he was not denied his right to effective assistance.

¶ 37                              b. Retained Counsel

¶ 38        Respondent also takes issue with the trial court's refusal to grant a continuance so that he could retain private counsel. When applying the sixth amendment right to counsel, the

- 10 -

supreme court has explained:

> "The determination whether to grant a continuance for substitution of counsel is a matter left to the discretion of the trial court, and will not be overturned absent an abuse of that discretion. [Citations.] The factors to be considered in evaluating a trial court's exercise of its discretion include [(1)] the diligence of the movant, [(2)] the right of the defendant to a speedy, fair and impartial trial, and [(3)] the interests of justice. [Citations.] However, it is well established that a trial court will not be found to have abused its discretion in denying a motion for substitution of counsel in the absence of ready and willing substitute counsel." *People v. Segoviano*, 189 Ill. 2d 228, 245 (2000).

¶ 39 " ' "An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." ' " *People v. Baez*, 241 Ill. 2d 44, 106 (2011) (quoting *People v. Patrick*, 233 Ill. 2d 62, 68 (2009), quoting *People v. Hall*, 195 Ill.2d 1, 20 (2000)); see *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) ("[B]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel.") (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). Because this analytical framework is adequate to protect a criminal defendant's sixth amendment right to counsel, we conclude that it is also adequate to protect a respondent's statutory right to counsel. *Cf. Br. M.*, 2021 IL 125969, ¶ 43.

¶ 40 In *Segoviano*, the supreme court found no abuse of discretion when the trial court denied defense "counsel's pretrial motion to withdraw from the case and obtain a 21-day continuance to seek substitute counsel" because "the motion did not even contain a representation

that substitute counsel had been secured, much less an averment that such substitute counsel was ready and willing to enter an appearance in the case." *Segoviano*, 189 Ill. 2d at 245. However, the circumstances of this case are slightly different; the court here *allowed* Welch to withdraw but nevertheless denied respondent an extended continuance of three to four months to seek substitute counsel. It is not clear from *Segoviano* whether the absence of ready and willing substitute counsel is *automatically* sufficient to refuse a continuance in these circumstances, but turning to the three enumerated factors, we find no abuse of discretion.

¶ 41    On the first factor, respondent's lack of diligence is clear. According to his own filings, he was aware as soon as November 2024 that he would not allow Welch to represent him; nevertheless, he did not reach out to any private attorneys before the hearing on February 20, 2025, and he told the trial court that he would not be able to retain an attorney for another three to four months.

¶ 42    On the second factor, our concern in this context is not with the constitutional right of a criminal defendant to a speedy, fair, and impartial trial as guaranteed by the sixth amendment (U.S. Const., amend. VI; accord Ill. Const. 1970, art. I, § 8) or the interest of the public in the prompt resolution of criminal prosecutions (see *Barker v. Wingo*, 407 U.S. 514, 528 n.28 (1972)). Rather, in this context, we are concerned with the rights and interests of all parties to the case, including the D.G., as well as the interest of the public in the efficient administration of proceedings involving the rights of minors. See 750 ILCS 50/20a (West 2024). Here, the trial court correctly noted that D.G. was six years old and that the case had already been pending for just shy of one year; the court reasonably concluded that a further continuance of three to four months would be unacceptable.

¶ 43    On the third and final factor, there is no indication that the interests of justice would

have been served by a continuance in this case, where respondent was intimately familiar with petitioners' allegations, had ample time to prepare, cross-examined the only witness against him, and testified on his own behalf.

¶ 44    As an aside, we note that appointed counsel failed to file and serve a written motion to withdraw his appearance pursuant to Illinois Supreme Court Rule 13(c) (eff. Jan. 1, 2023) after he was "fired" by respondent. However, any noncompliance with the formal requirements of Rule 13(c) in this case was harmless because of the previously filed and served motion that informed the trial court and the parties that respondent had fired appointed counsel and would proceed *pro se*. See *In re S.W.*, 2015 IL App (3d) 140981, ¶ 33 (declining to find error when it was apparent from the record that the respondent had fired appointed counsel); *Davion R.*, 2019 IL App (1st) 170426, ¶ 73 (same). Nonetheless, while a party who fires his attorney obviously has notice of that fact, the court and the other parties of record may not; here, it appears that the court went into the hearing without knowing that its appointment of Welch had been rejected by respondent. Counsel, however, was aware of respondent's dissatisfaction; had he filed a prompt Rule 13(c) motion in advance of the hearing, the court might have been given a better opportunity to address whether counsel's withdrawal "would delay the trial of the case, or would otherwise be inequitable." Ill. S. Ct. R. 13(c)(3) (eff. Jan. 1, 2023); see, *e.g.*, *People ex rel. Burris v. Maraviglia*, 264 Ill. App. 3d 392, 399-400 (1993) (upholding a trial court's denial of an unpaid attorney's motion to withdraw on the basis that granting the motion would be inequitable). To that end, a discharged attorney's prompt compliance with the formal requirements of Rule 13(c), whenever possible, is preferable.

¶ 45                                C. Unfitness Finding

¶ 46    We now turn to respondent's arguments challenging the trial court's finding that he was unfit. In order to establish the presumption of depravity, petitioners were required to show

- 13 -

that respondent had been "criminally convicted of at least 3 felonies under the laws of this State or any other state, *** and at least one of these convictions took place within 5 years of the filing of the petition *** seeking termination of parental rights." 750 ILCS 50/1(D)(i) (West 2024). For purposes of our analysis, it is sufficient to note that petitioners would be entitled to the presumption if they could prove that (1) respondent was convicted of an Illinois felony in Peoria County case No. 14-CF-106, (2) respondent was convicted of an Illinois felony in Tazewell County case No. 14-CF-494, and (3) respondent was convicted of an Illinois felony in Ford County case No. 20-CF-40 on July 14, 2020, which was within 5 years of the filing of the petition for adoption on February 23, 2024.

¶ 47        Petitioners sought to prove these facts by introducing certified copies of the three judgments of conviction and asking the trial court to take judicial notice of the fact that respondent had been convicted. On appeal, respondent argues that court's findings are against the manifest weight of the evidence, relying on the following authority:

> "The traditional rule in Illinois has long been that a prior conviction can be proved only by the record or an authenticated copy showing the caption, return of the indictment in open court by the grand jury, the indictment and arraignment of the defendant, paneling of the jury, and the final judgment of the court." *People v. Slaughter*, 84 Ill. App. 3d 88, 95 (1980) (citing *People v. Lane*, 400 Ill. 170, 173 (1948)).

Properly construed, the parties' dispute is not about the persuasive weight of the evidence *in this case* but whether a certified copy of a respondent's judgment of conviction is *categorically* inadequate to prove the conviction. This presents a question of law that we review *de novo*. *Cf. People v. Currie*, 2022 IL App (4th) 210598, ¶ 62 ("Whether certified copies of conviction[s] alone

are an acceptable method of introducing other-crimes evidence *** is a question of law that we review *de novo*.").

¶ 48       While respondent did raise contemporaneous objections to the trial court's consideration of the certified copies of his convictions, those objections were not specific enough to avoid forfeiture of the issue he now seeks to raise on appeal, which would ordinarily limit our review to plain error. Ill. R. Evid. 103(a)(1), (b)(1), (e) (eff. Oct. 15, 2015). Nevertheless, petitioners have not argued forfeiture on appeal, and we are mindful that "a reviewing court should not easily declare forfeiture of an argument directed at a decision to terminate [parental] rights," so we will consider the merits. *Br. M.*, 2021 IL 125969, ¶ 40.

¶ 49       The traditional rule cited in *Slaughter*, and relied upon by respondent, originated in *Bartholomew v. People*, 104 Ill. 601 (1882). There, the supreme court distinguished between "a certified copy of the judgment" and "a copy of the record of conviction" that would have included "the caption, returning of the indictment into open court by the grand jury, the indictment and arraignment of the defendant," which the court said were "as indispensable parts of the record as the judgment of conviction." *Id.* at 609. The supreme court subsequently added that "the record of the impaneling and verdict of the jury, in the waivers of the jury [*sic*]," were also indispensable, finding that the trial court erred in admitting only "the final judgment order imposing punishment." *Kirby v. People*, 123 Ill. 436, 438 (1888); accord *Lane*, 400 Ill. at 173.

¶ 50       However, *Lane* applied this common-law rule "[i]n the absence of any statutory provision as to what [wa]s necessary to prove prior conviction." *Lane*, 400 Ill. at 173. The Illinois Rules of Evidence now provide that in at least some circumstances, "[e]vidence of a final judgment, entered after a trial or upon a plea of guilty," is admissible "to prove any fact essential to sustain the judgment." Ill. R. Evid. 803(22) (eff. Jan. 25, 2023) (establishing this as an exception

to the rule against hearsay). And even before the rules of evidence were enacted, *Lane*'s precedential value was questionable, given that the supreme court appears to have viewed "a certified copy of [a] conviction from the circuit court" as sufficient "proof of [the] defendant's prior felony conviction" to sustain a conviction for unlawful use of weapons by a felon. *People v. Smith*, 148 Ill. 2d 454, 465 (1992).

¶ 51        In any event, we need not resolve whether the traditional rule retains its vitality because respondent's argument fails on its own terms. At the time *Slaughter* was decided, the supreme court had already recognized the limitations on its line of precedent suggesting that formal proof of a conviction was *required*:

> "To the extent that these and similar holdings may be thought to create an inflexible rule requiring formal proof of earlier court records only by authenticated or certified copies of those records and proof [of] identity, they are incompatible with considerations of judicial economy and efficiency essential to the disposition of present-day caseloads. Nor do such procedures provide any necessary or useful safeguards to the defendants in cases such as this where the fact that the prior conviction had occurred has never been denied." *People v. Davis*, 65 Ill. 2d 157, 164 (1976).

See Ill. R. Evid. 201(b) (eff. Jan. 1, 2011) (providing for judicial notice of a fact "not subject to reasonable dispute in that it is *** capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

¶ 52        This is a case, like *Davis*, where respondent has never denied that the convictions actually occurred; he has merely attempted to collaterally invalidate those convictions based on alleged improprieties in the proceedings. However, he has not demonstrated one of the extremely

narrow grounds for a successful collateral attack. See *People v. Castleberry*, 2015 IL 116916, ¶ 15 (lack of personal or subject-matter jurisdiction); *In re N.G.*, 2018 IL 121939, ¶ 58 (conviction pursuant to a facially unconstitutional statute). Ultimately, formal proof of respondent's convictions beyond the certified copies of the judgments of conviction would not have "provide[d] any necessary or useful safeguards *** in [this] case." *Davis*, 65 Ill. 2d at 164.

¶ 53    Accordingly, the certified copies of respondent's judgments of conviction were sufficient to prove the convictions.

¶ 54                    D. Failure to Bifurcate the Hearing

¶ 55    Finally, respondent argues, and petitioners concede, that the trial court erred by conducting a combined hearing on unfitness and D.G.'s best interest rather than bifurcating the hearing. See *In re Adoption of Syck*, 138 Ill. 2d 255, 277 (1990); see also 705 ILCS 405/2-18(1) (West 2024). The supreme court explained in *Syck* that "the trial court is initially to determine the parental unfitness, basing that determination on any evidence relevant to the particular grounds of unfitness alleged" at the first step; it is only at the second step when the court may consider whether the child's best interest "would be served by [his] adoption by the petitioners." *Syck*, 138 Ill. 2d at 276-77. At the second step, "it is the parent's past conduct in the then-existing circumstances that is under scrutiny." *Id.* at 276.

¶ 56    "A single hearing consolidating issues of unfitness and best interests carries a risk of prejudice from considering evidence irrelevant to the unfitness question before determining that issue." *In re V.S.*, 285 Ill. App. 3d 372, 375 (1996). However, in order for this error to warrant reversal and remand for a bifurcated hearing, respondent must establish (1) a timely objection was made below; (2) a reason to believe that the trial court considered improper evidence in its unfitness determination; and (3) "that the erroneous commingling of evidence of the parent's

unfitness and the child's best interests was not *** harmless." *Id.* at 375-76. In the present case, it is undisputed that respondent did not make a timely objection.

¶ 57    Furthermore, there is no reason to believe that the trial court considered inadmissible evidence in its unfitness determination. Respondent's past criminal activity is what created the then-existing circumstances, *i.e.*, his imprisonment, which showed both his lack of rehabilitation and his complete inability to provide for D.G.'s needs for the foreseeable future. See *In re M.C.*, 2018 IL App (4th) 180144, ¶ 38; see also *In re Gwynne P.*, 215 Ill. 2d 340, 362 (2005) (recognizing that incarceration prevents a parent from providing financial support). The court clearly articulated that the "first step" was "whether or not [respondent] is an unfit parent." Any arguable commingling of the evidence about D.G.'s well-being with that of respondent's unfitness was harmless.

¶ 58                                III. CONCLUSION

¶ 59    For the reasons stated, we affirm the trial court's judgment.

¶ 60    Affirmed.